### GEORGE C. DARITY v. THE STATE.

No. 1417.    Decided January 26, 1898.

**Assault with Intent to Murder—Charge—Specific Intent—Intoxication.**

On a trial for assault with intent to murder, where the evidence showed that the defendant was very much under the influence of liquor at the time he fired into the house the shot which wounded the daughter of the man residing in the house, and the court, besides the statutory charge as to intoxication from the recent use of intoxicating liquors, further instructed the jury, in effect, that it was essential to conviction that there was a specific intent to take life; but that if defendant voluntarily discharged his gun into the house with ·intent to kill any person who might be in the way of the shot, this would include the intent to kill the injured party. And further, that if defendant discharged his gun into the house in a manner to constitute an unlawful assault, and without the specific intent to kill, that then he would be guilty of aggravated assault, etc.    Held, the charge was both correct and sufficient, and it was not error to refuse instructions to the effect, that if defendant was so drunk at the time as not to be capable of forming the specific intent to kill, he should be acquitted.

APPEAL from the District Court of Lamar.    Tried below before Hon. E. D. McCLELLAN.

Appeal from a conviction for assault with intent to murder; penalty, two years imprisonment in the penitentiary.

Darity, the defendant, was a farmer who lived some ten or twelve miles out from the city of Paris, Texas, in the country.    On the morning of the day of the occurrence which resulted in this prosecution, he went to Paris in his two-horse wagon to transact some business.    He carried his double-barreled shotgun with him, because his life had been threatened by a man who had a short time previously been arrested at his instance for horse theft, but who had been discharged on his examining trial. After he had reached the city of Paris and had transacted the business that had called him there, he seems to have spent the balance of the day in the several saloons of the city, and drank whisky to such an extent as

that, about dark, when he proposed to return home, several witnesses testified "that he was so crazy drunk that he did not seem to know what he was doing." A little after dark, however, he got into his wagon and started home. After getting out about a mile and a half from town he seems to have lost his way, and calling at a house on the road, he was directed by the man of the house back to town, so as that he could get another start from there in the direction of his home.

In going back through town, as he passed the house of one Frank Craft, the latter says that he was awakened from a sleep by hearing the defendant, who was in a wagon in front of Mr. Morrison's gate, saying, "Look out! I am going to shoot." Craft says that he became frightened, and seeing the wagon start off down the street in the direction of where his (Craft's) mother and sister lived alone, he hurried out, got his horse, and galloped on after the man. That when he overtook him, a short distance away, the man inquired the way to town. He gave him the direction, and defendant asked him to get in the wagon with him, and after his refusing to do so, defendant picked up his gun and told him he had to get into the wagon. Craft says that he was close enough to, and did, seize the gun, which they struggled over for some time, until finally he got the defendant to lay the gun down in the back part of the wagon. Defendant pulled a bottle of whisky from his pocket and insisted upon Craft's drinking; and, upon Craft's refusing to do so, he (defendant) said he would make him drink, and commenced feeling around for his gun. Craft put spurs to his horse and fled rapidly to the Union Depot to telephone for the police, and while he was waiting for the police to come he heard the gun fire in the direction of Mr. Hill's house.

Morrison testified, that about 9 o'clock at night he and his wife were sitting on the gallery in front of his house, when a man in a wagon stopped in front of the gate between his house and Craft's, and hallooed, "Look out! I am going to shoot." That he and his wife hurriedly ran into the house and closed the door. That in a few minutes he went out again and found the man with the wagon gone, and Craft on his horse, also gone. And while he was standing there talking to Mrs. Craft he heard the gun fire in the direction of Mr. Hill's. The impression the man's conduct made upon him was that he was very drunk or crazy.

Mr. T. S. Hill testified, that on the night in question there were some young persons, ladies and gentlemen, at his house at an entertainment. The house was brightly lighted up, windows and doors all wide open, and some young men were playing upon musical instruments. About 10 o'clock, as he was upstairs leaning over the stairs listening to the music, he heard the loud report of a gun from the street, and saw a wagon and team start off up the street. He went down, and found that his daughter had been shot.

Bessie Hill, the injured young girl, stated that she was shot in the left leg below the knee, and that at the time she was standing in the hall by a table.

A number of places were found about the hall and stairway where the buckshot had struck, and one or more of them were picked up in the house. The next morning the defendant was found in a closed lane, where he had evidently spent the balance of the night, "sleeping off his drunk," as it was expressed by the deputy sheriff. His gun was found, and it had been recently discharged. It was in evidence that defendant had never had any difficulty with Mr. Hill nor any person at his house that night.

Defendant testified about his coming to town and about the drinking he had done up to about 3 o'clock. That at 3 o'clock he recollected that he started to go home, and that after that time he did not recollect anything that occurred.

The questions raised by defendant upon the charge of the court are sufficiently set forth and illustrated in the opinion, and no further statement is necessary.

*Allen, Hathaway & Allen,* for appellant.

*Mann Trice,* Assistant Attorney-General, for the State.—The reckless disregard of human life exhibited by appellant is sufficient to show that he entertained the specific intent to kill. Upon the question as to whether his mind was capable of forming the intent, it is clear that if incapable it was rendered so by the voluntary recent use of ardent spirits. And on this phase of the case the instruction given comports with the rule announced by article 41 of the Penal Code. If the shooting was accidental, then the jury were instructed to acquit. As before stated, if the mind was incapable of forming the intent necessary to constitute the offense, same was produced by the voluntary recent use of intoxicating liquor; and as this does not justify or excuse, it supplies the specific intent to kill; and as the verdict is for the lowest penalty, it is evident the jury disregarded the phase of aggravated assault presented by the charge. The facts sustain their finding, and the judgment should be affirmed.

HENDERSON, JUDGE.—Appellant was convicted of an assault with intent to murder, and his punishment assessed at two years in the penitentiary; hence this appeal.

The only questions necessary to be noticed relate to the charge of the court, which is excepted to in the motion for a new trial. The evidence showed that appellant was very drunk at the time of the alleged assault. Appellant asked a number of charges predicated on the theory that if appellant was so drunk at the time as not to be capable of forming the specific intent to kill he should be acquitted.

In the general charge of the court, besides the statutory charge on intoxication produced by the recent use of intoxicating liquors, the court further instructed the jury as follows: "There can be no offense of assault with intent to murder without the specific intent to take life. So, if you should believe that the defendant discharged a gun into T. S. Hill's

house, and thereby wounded Bessie Hill, but unless you further believe beyond a reasonable doubt that the defendant intended to kill Bessie Hill, you can not convict the defendant of assault with intent to murder. But upon this point you are instructed that if the defendant voluntarily discharged his gun into T. S. Hill's house with intent to kill any person who might be in the way of the shot, and that he thereby wounded Bessie Hill, such intent upon the part of the defendant would in law include the intent to kill Bessie Hill." And the court further charged: "If you should believe from the evidence that the defendant intentionally fired his gun into Hill's house, and wounded Bessie Hill, in such manner as to constitute an unlawful assault, as hereinbefore defined and explained, and that said means as used by him was a deadly weapon, and if you do not believe beyond a reasonable doubt that he had the specific intent to kill, such as to constitute assault with intent to murder, as the matter has hereinbefore been explained, then you will find the defendant guilty of an aggravated assault, and assess his punishment," etc.

By this charge the court clearly instructed the jury to acquit the defendant of assault with intent to murder, unless they believed at the time that he had the specific intent to kill; and this, no matter how the want of defendant's specific intent was caused. The charge furthermore told the jury, if they believed he committed an unlawful assault in shooting said Bessie Hill, but did not shoot her with the specific intent to kill her, to find him guilty of an aggravated assault. This accords with our view of the subject. The court furthermore instructed the jury that if they believed defendant accidentally discharged his gun, and so shot Bessie Hill, to acquit him altogether. In our opinion, the charge of the court adequately presented every issue in the case, and sufficiently guarded all of the rights of the defendant, under the testimony; and it was not necessary, even if the requested charges had been properly framed, for the court to give them. The evidence unquestionably shows that appellant was very much under the influence of liquor at the time he fired the shot that struck Bessie Hill, but it does not show that he was so drunk at the time as not to entertain the specific intent to take life. His acts and conduct just before the shooting indicate that, while he knew what he was about, he was in a reckless and dangerous mood, and was utterly disregardful of the rights of others. In such a mood he recklessly fired into the house of another, and wounded a little girl. Under the circumstances, we think, if by the shooting he had slain Bessie Hill, defendant would have been at least guilty of murder in the second degree, upon implied malice. The judgment is affirmed.

*Affirmed.*