GEORGE VINING v. THE STATE.

No. 720.    Decided October 19, 1910.

Rehearing Granted April 24, 1912.

**1.—Assault to Murder—Express Malice—Shooting in Crowd.**

Where the indictment charged that the assault was made with malice aforethought upon a person named therein with intent to kill him, there was no reversible error in the charge of the court, which authorized the conviction of defendant if the jury believed that he, with express malice, shot into a crowd and struck the person named in the indictment, although defendant may have intended to shoot some other person in the crowd; besides, the evidence showed that defendant had threatened that he would kill the whole crowd which included the party injured.

**2.—Same—Rule Stated—Intent to Kill.**

Where a party shoots into a crowd with the specific purpose of killing any one of them, it includes all the crowd at which the shot or shots may be directed.

**3.—Malice—Inference—Deadly Weapon.**

Malice, in the absence of evidence of excuse, extenuation, or justification will be inferred from the act and conduct of the party in striking another with a deadly weapon, or from the conduct which shows cruelty of disposition and recklessness of consequences, but it is generally inferred from all the circumstances attending the case.

**4.—Same—Rule Stated—Intent to Kill.**

Where a party makes threats of killing the first man he meets, or that he intends to kill by shooting into a crowd, this indicates a specific intent to kill, and such threat would include everyone in the crowd, although he named no one of them.

**5.—Same—Charge of Court—Practice on Appeal.**

While the charge of the court is not technically correct in all its language, yet under the exception taken thereto, which is of a general nature, there is no reversible error.

**6.—Same—Definition of Offense—Implied Malice.**

An assault with intent to murder can be committed with implied as well as with express malice, and the statute defining this offense does not restrict the intent to kill to the person assaulted.

**7.—Same—Adequate Cause—Intent to Kill.**

One may shoot another with intent to kill, but if his mind is by an adequate cause aroused to such degree of sudden anger, fear, rage, or resentment as to render him incapable of cool reflection, he would not be guilty of an

assault to murder, even though the intent to kill was proven, and he would only be guilty of aggravated assault.

**8.—Same—Offense Defined—Malice—Other Person.**

To constitute assault with intent to murder, it must be shown that defendant acted with express or implied malice, and fired with the intent to kill, and if the evidence shows all these elements to exist, then the offense is assault with intent to murder, even though he should strike some person he did not at that time see. Article 48, Penal Code.

**9.—Same—Case Stated—Adequate Cause—Charge of Court.**

Where, upon trial of assault with intent to murder, the evidence showed that the defendant under the influence of passion aroused by adequate cause fired into a crowd of men and struck the party injured, it was reversible error, not to submit the issue of adequate cause in a charge to the jury, the defendant having submitted a special requested charge which, though not correct, called the court's attention to the issue involved.

Appeal from the District Court of Cherokee. Tried below before the Hon. James P. Gibson, Special Judge.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Imboden & Perkins,* for the appellant.—On the question of the court's charge: White v. State, 13 Texas Crim. App., 259; Choice v. State, 52 Texas Crim. Rep., 285: Spencer v. State, 52 Texas Crim. Rep., 289.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—The conviction was for assault to murder, the punishment being assessed at two years in the penitentiary.

Appellant was, or had been, in the employ of the Farmers' Union Telephone Company of Alto, at Alto, in Cherokee County. There had been a settlement in the afternoon about two or three o'clock, between the board of directors and appellant, in regard to his wages as manager of the switchboard of the telephone company. This seems to have grown out of the fact of some delay or trouble with reference to payment of his wages, and we judge from the record that there had been some delay in one or more previous payments. When the meeting occurred in the afternoon and the settlement was had it was understood that appellant was to vacate his position and the company had selected to succeed him a young man by the name of Henderson, and that appellant was given a reasonable time to vacate the establishment and ship his goods. That night, some time after dark, some of the directors got together and went to the room where the switchboard was located. Appellant and his wife and Miss Baxter were there. Appellant used the same room where the switchboard was situated as a bedroom for himself and wife. The directors demanded

that appellant should place a cot in this room for Henderson so that he might sleep near the switchboard to answer calls and give attention to work. This appellant declined to permit, as it was his bedroom for himself and his wife and he did not want the young man sleeping in the same room on a cot. The parties became a little warm in their conference and appellant stepped into an adjoining hall, which was under the control of the Masonic Fraternity, and returned in a moment or two and placed something under his coat. Just what this was none of the witnesses knew. The parties insisted that Henderson should take charge at once and sleep in the room. Appellant remarked that if the ladies were not present he would tell them what he thought of them. One of the board of directors remarked, "Well, we will go downstairs." Appellant accepted and said that he would go. The director changed his mind about the matter and did not go. Appellant then called three of the board who were present curs, and said to another, C. L. Nelters, he did not know what to call him, and to Mr. Henderson he remarked, "You are a scab." The assaulted party, Perry Bounds, a boy about 16 or 18 years of age, was sitting on the bed not joining in the conversation. There was a gun in the room close to the switchboard which appellant secured and remarked to the effect that he would kill all of them. This produced an immediate exit from the room with the exception of one of the board of directors. As they ran out of the door into the hallway in the direction of the stairway, appellant fired one shot. This struck Perry Bounds. There is a controversy as to whether the ball entered from the rear or front. It may be judged, however, that the ball entered the front as shown by the testimony of the physician and the general description of the wound, the larger hole being in the rear and the small one in front. It may be fairly concluded that the ball entered the nose and came out behind the right ear. At the discharge of the gun the lights went out, the boy fell and one witness testified that as he ran out he heard him groan. He was in a hurry and did not pay any attention to the boy. Appellant passed out and saw there was some one shot and remarked to the boy, "Well, I did not intend to shoot you." The boy got up, went down the street where his wound received attention. He testified on the trial. This is a sufficient statement to bring in review the questions urged for reversal.

1. The court charged the jury that if they should believe beyond a reasonable doubt that defendant with a deadly weapon and with malice aforethought, did assault Perry Bound with the specific intent on the part of defendant to kill and murder him and such assault was committed under circumstances that had said Perry Bounds been killed, the killing would be murder, he would be guilty of an assault with intent to murder; or if they should find from the evidence that appellant unlawfully and with express malice aforethought did shoot into a crowd of persons with a gun and that such gun was a deadly weapon with the specific intent to kill, among which crowd was Perry

Bounds, and that he shot and wounded Perry Bounds, although he may have intended to shoot some other person in the crowd, then you will find him guilty of assault with intent to murder. And further, if they should find that defendant shot said Bounds but that the shooting was without malice and while his mind was under the immediate influence of sudden passion arising from an adequate cause such as anger, rage, sudden resentment, etc., they would find him not guilty of an assault to murder. The court also charged aggravated assault. It will be noted the indictment charged that the assault was made with malice aforethought upon Perry Bounds with intent to kill him. The particular clause in the charge criticised is that which authorized the conviction of appellant if they should believe that he, with express malice, shot in the crowd and shot Bounds, although he may have intended to shoot some other person in the crowd, then "you will find him guilty of assault with intent to murder." The contention is sharply and tersely put that appellant would not be guilty of assault with intent to murder Perry Bounds unless he had the specific intent to kill Perry Bounds and that the specific intent to kill some other or any other person in the crowd would not satisfy the demands of our statute. In support of this we are cited to White v. State, 13 Texas Crim. App., 259. By a long list of decisions in this State by this court as well as the Supreme Court, it seems to be well settled that there must be a specific intent to kill. It is claimed that the mere fact that shooting at one party and killing another would not be sufficient, although the killing of the third party might be murder. This is based upon the proposition that there may be a case of murder under such circumstances without the specific intent to kill the party actually killed. After a careful revision of this question we are of opinion that this contention is not sound at least as applicable to the conditions in which the record presents this case. It may be stated that where a party with malice shoots at one man with the purpose of killing him and kills a bystander, or makes a mistake in the identity of the individual killed, this would constitute murder in the second degree by reason of the fact that the slaying party had no purpose or intent of killing the party actually killed. Our reports are full of this character of case. The case we have here, however, comes under a different statement of facts. It seems to be uncontroverted that when appellant got his gun he made the statement that he would kill all of the party. They began to run out of the room when he fired upon the retreating bunch and the shot took effect in the head of the boy. This boy was one of the crowd in the room, although he took no part in the controversy and said nothing. It is to be presumed from the fact that as the room was only fourteen feet square and lighted that appellant was aware of those who fled through the door and that he saw the boy when he went with the crowd; that he did go with the crowd is evidenced by the fact that he fell in the hallway after passing from the room where appellant and the crowd had been congre-

gated. Now, it seems to be pretty well settled, as we understand the authorities, that where a party shoots into a crowd with the specific purpose of killing anyone of them that it includes all the crowd at which the shot or shots may be directed. Appellant had not named any particular individual he purposed killing but stated that he would kill all of them. Malice, in the absence of evidence or extenuation, excuse, or justification, will be inferred from the act and conduct of the party in striking or shooting another with a deadly weapon, or from the conduct which shows cruelty of disposition and recklessness of consequences, but is generally inferred from all the circumstances attending the case. A general proposition is laid down that "where an indiscriminate assault is made on a body of persons, general malice is presumed, as where a gun is fired in the direction of a crowd, . . . or where shooting is done recklessly, regardless of the lives of others. This proposition is found stated in the eighth volume of American & English Encyclopedia of Law, p. 283. That proposition has been clearly sustained by this court in Aiken v. State, 10 Texas Crim. App., 610. We understand this rule to include the proposition that where a party makes threats of killing the first man he meets, or that he intends to kill by shooting into a crowd that there would be indicated a specific intent to kill, and if he undertook to do so and fired, it would be an assault to murder, or in the other case, if he shot into a crowd intending to kill anyone of them that such threat would include every one in the crowd into which he shot, although he named no one of them. While appellant under the facts stated had not threatened specifically to shoot anyone of them and the facts seem to indicate that he had nothing against the boy and his ill will was directed against the board of directors who were present, the boy not being one of the board, yet, from the fact that the threat was general that he intended to kill all of them and that his firing into the crowd as they ran out at the close range from which he did fire, and all the facts and circumstances in the case, we are of opinion that the court was justified in giving this charge. The theory of the defense in his proposition before us is that inasmuch as the indictment charged specifically that appellant shot Perry Bounds with the specific intent to kill him that therefore, the evidence must show pointedly that he had the specific intent to shoot Perry Bounds and that the general statement that he would kill the whole crowd did not include Perry Bounds. We are of opinion there is more plausibility in this proposition than there is of real law. The law has otherwise held in this State, Mathis v. State, 39 Texas Crim. Rep., 549.; Darity v. State, 38 Texas Crim. Rep., 546. If appellant, as the evidence discloses, threatened to kill all of those who were present and as they fled the room appellant fired upon them with a rifle, as the facts show, the specific intent was to kill any or all of them. Therefore, each member of the party present was included in the threat and was in contemplation of his malice. Cases above cited. If this conclusion is correct, it would follow that

the specific intent to kill would obtain as to each of the parties present and whichever one should receive the bullet discharged from the gun would be included within the threat and specific intent. Viewing it from this standpoint, while this charge is not technically correct in all its language, yet, we are of opinion that under the exception taken to it, which is general, that it would not be of sufficient importance to require a reversal of the judgment. If appellant's contention is correct, then inasmuch as appellant had not named anyone of those present such an allegation in the indictment could not be proved because appellant had not mentioned anyone specifically. Under the facts, appellant, at very short range, standing in a room fourteen feet square, shooting at the party emerging from that room, could have selected anyone of the fleeing party to have shot. The boy was not more than eight or ten feet from the door through which they emerged when found shot, and being at such close range and the room lighted at the time appellant fired, the inference would be that he selected him. We are of opinion that the evidence is sufficient to include the specific intent on the part of appellant to shoot Bounds, and that the same proposition would be true as to anyone of the crowd who were in the room at the time of the threat and shooting. We have treated this question mainly from the standpoint of the specific intent included in the general threat made by appellant just before firing the shot. Viewing this from another standpoint, that is, that appellant stated that he did not intend to shoot Bounds, this would seem to involve the proposition that if appellant shot at one of the other fleeing parties and unintentionally shot Bounds, he could not be guilty of an assault to murder. We do not believe this asserts a correct proposition of law. The question was directly adjudicated against appellant in Mathis v. State, 39 Texas Crim. Rep., 549. Appellant's contention in that case was that the court erred in charging the jury that an assault and battery may be committed though the person actually injured thereby was not the person intended to be injured. Judge Henderson, speaking for the court, uses this language: "The contention here is, that before appellant could be guilty of the offense of assault with intent to murder, he must have the specific intent to kill the person assaulted. We do not agree with this contention. An assault with intent to murder can be committed with implied as well as with express malice, and the statute defining this offense does not restrict the intent to kill to the person assaulted. The assault is only required to be with intent to murder, that is, to murder some one, and we hold that if A shoots at B with intent of his malice aforethought to kill and murder B, but accidentally shoots C and inflicts a wound upon him, that the malice is carried over to C, and that this is an assault with implied malice to murder C." The same proposition we understand to be asserted in Darity v. State, 38 Texas Crim. Rep., 546. So, from either standpoint, whether under appellant's

threat to kill anyone of the crowd present, he shot Bounds or he shot at one of the crowd not intending to hit Bounds but did shoot him, the assault would be with intent to murder under the circumstances of this case.

Therefore, believing the charge to be sufficient, or at least under the circumstances of the case not vitally incorrect, we are of opinion the judgment ought to be affirmed and it is accordingly so ordered.

*Affirmed.*

ON REHEARING.

April 24, 1912.

HARPER, JUDGE.—This case was affirmed at the last term of this court in an opinion by Presiding Judge Davidson, and at his request we have made a study of the record, and write this opinion.

Appellant in his motion for rehearing earnestly insists that as the evidence does not clearly show that he shot at the person charged in the indictment with the specific intent to kill that person, the court erred in his charge in authorizing a conviction, if he (appellant) shot at another person than the one named in the indictment, even though he shot at such other person with the intent to kill. It may be conceded that in an assault to murder case the intent to kill must be proven, as is insisted, but that is not the only element. One may shoot another with the intent to kill, but if his mind is, by an adeqquate cause, aroused to such a degree of sudden anger, fear, rage or resentment as to render him incapable of cool reflection, he would not be guilty of an assault to murder even though the intent to kill was proven. In law, under such conditions, it would be only an aggravated assault. Thus in assault to murder not only must the intent to kill be proven, but malice aforethought, either express or implied, must be shown to have existed. In a case of unlawful assault, if the intent to kill is proven, and either express or implied malice is shown, then the offense is assault to murder. So if one shoots at A with malice with intent to kill him, and he misses A and inadvertently shoots B, he has committed an offense, and the fact that he missed A and struck B does not alter the facts, nor change the grade of offense. The offense is committed, and if he acted with the specific intent to kill from malice it is an assault to murder. He can be prosecuted but once, and the State having elected to prosecute for making an assault on the person whom he strikes, if convicted he could not be again prosecuted for an offense against the person he intended to strike. He is convicted of the offense which the facts show he committed. There is no question that one who shoots another is guilty of an assault, unless the gun is fired by accident or unintentionally. In this case, under the evidence, there is no question that appellant intentionally fired the gun, and by reason of that fact he is guilty of an assault. In deciding of what grade of assault other issues arise. To constitute assault to murder it must be shown that he acted with express or implied malice

and fired with intent to kill, and if the evidence shows all those elements to exist, then the offense is assault to murder, even though he should strike some person he did not at that time see, for the law punishes one for the offense he actually commits. Article 48 of the Code provides: If one intending to commit a felony shall through mistake or accident do another act which, if voluntarily done would be a felony, he shall receive the punishment affixed by law for the offense committed; and Mr. Blackstone in his Commentaries, lays down the rule: "If A attacks B with malice and shoots at him, but misses him, and kills C against whom he bore no malice, it is murder. This is not because of any malice in fact against C, but because of the evil design against B, which, it is said, is carried over against C by implication." (4 Black. Com., 201.)

In this State an assault to murder may be committed with either express or implied malice, and as said by Mr. Blackstone, because of the evil intent and design the law carries it over and by implication against the person actually assaulted. This rule has been enforced in this State at all times, it having been held, where a person acting in self-defense shoots at another but misses him and kills a third person, he is guilty of no offense. (Plummer v. State, 4 Texas Crim. App., 310; Clark v. State, 19 Texas Crim. App., 495.) Thus it is seen that one is held solely responsible for his acts, and of this he can not be heard to complain. We are of the opinion that the original opinion is correct on the questions therein discussed, but there is another question in the case which was unintentionally overlooked at that time, it not being pressed on appeal at that time.

As hereinbefore stated, one is held responsible for his acts, and any defense, mitigation or extenuation that could have been offered had he shot the person he intended, may be offered if prosecuted for making an assault on one he did not intend to shoot in those cases where he missed one person and struck another. (Fretwell v. State, 43 Texas, 501; Leggett v. State, 21 Texas Crim. App., 382; Carter v. State, 30 Texas Crim. Rep., 551.) In our State one who kills another while his mind is clouded by anger, rage or resentment to that extent to be incapable of cool reflection, aroused by an adequate cause, is not guilty of murder, but of manslaughter only, and if one shoots another under circumstances that had he killed such person, he would only have been guilty of manslaughter, then such person not dying, the assailant is guilty only of an aggravated assault, the element of malice being lacking. In this case appellant was manager of a telephone exchange; he and the directors disagreed, and they settled about noon one day, and a Mr. Henderson was placed in control of the exchange. Appellant and his wife were keeping house in the telephone office, sleeping there, etc. The directors agreed at the time of settlement to give him ample time to move out. It was required that the operator sleep there to answer calls at night. When Mr. Henderson took charge Mrs. Vining informed him that they could not move out

that evening, and as they had an extra cot he could take it in the adjoining room and sleep on it, unless a young lady friend came to visit her, in which event she would attend to the exchange that night for him. The young lady came and at night-fall the directors learned that Mr. Henderson could not remain in the office. They gathered in a body and went to the office after supper and demanded that Mr. Henderson be permitted to remain there that night, in the room where appellant and his wife had their sleeping apartments. High words ensued, when appellant's wife and her visiting friend left the rooms; other words passed between appellant and the directors, when appellant grabbed a gun and fired, saying, "I am going to kill every G—d one of you," the shot striking a person not a director of the exchange.

Appellant in special charge No. 2, to the refusal to give which an exception was reserved, raises the issue of his right to hold possession and evict persons entering therein. While the charge as drawn should not have been given under the evidence, yet it called the attention of the court to the theory that appellant was in no wrong in holding the premises for the night under the circumstances, and if the directors sought to force him out that night and by the use of language and their conduct, in the presence of his wife and her visitor, aroused in appellant sudden anger, rage or resentment, rendering him incapable of cool reflection, such acts, words and conduct would be adequate cause to reduce the offense to an aggravated assault. That is if he, by such conduct, was made angry to the extent of being incapable of cool reflection, the conduct of the parties would in law under the circumstances be an adequate cause to reduce the offense. In no part of the charge does the court define or attempt to define adequate cause as applicable to the evidence in this case. Adequate cause should have been defined and this question should have been submitted to the jury under a proper charge, and on account of the failure to do so, we are of the opinion that a rehearing should be granted and the case reversed and remanded.

It is contended that on the questions herein presented, that this court has two lines of decisions. If so, in so far as any of them conflict with the original opinion and this order on the motion for rehearing, they are hereby overruled.

The motion for rehearing is granted, the affirmance is set aside, and the judgment is now reversed and the cause remanded.

*Reversed and remanded.*