[Crim. No. 1121. Second Appellate District, Division Two.—December 13, 1924.]

# THE PEOPLE, Respondent, v. BARNEY BRANNON, Appellant.

[1] CRIMINAL LAW—TWICE IN JEOPARDY—IDENTITY OF OFFENSES.— It is the identity of the offense, and not of the act, which is referred to in the constitutional guarantee against putting a person twice in jeopardy.

[2] ID.—INJURY OF SEVERAL PERSONS BY SINGLE ACT—NUMBER OF OFFENSES.—Where two or more persons are injured in their persons, though it be by a single act, yet, since the consequences effect, separately, each person injured, there is a corresponding number of distinct offenses.

[3] ID. — INCLUSION OF LESSOR OFFENSE IN GREATER — JEOPARDY. — If two or more offenses arise as one result from a single act, and one of them includes within itself all the others, as murder includes manslaughter, then, if the defendant has been in jeopardy for the offense which includes the others, he has been in jeopardy for all of the offenses; and this is often true where he has been put in jeopardy for even the lowest of the offenses. In such cases, more than one offense cannot be carved out of the same unlawful act.

[4] ID.—KILLING OF PERSON OTHER THAN ONE INTENDED—TWO OFFENSES.—Where defendant shot at his wife intending to kill her but instead killed another person, defendant's act had two

---

1. Identity of offenses in plea of former jeopardy, note, 92 **Am. St. Rep.** 89. See, also, 7 **Cal. Jur.** 955 et seq.

2. On acquittal on charge as to one as bar to charge as to the other, where one person is killed or assaulted by act directed at another, note, 2 **A. L. R.** 606.

On acquittal upon charge of murder of, or assault upon, one person as bar to prosecution for like offense against another person at the same time, note, 20 **A. L. R.** 341. See, also, 8 **R. C. L.** 148; 7 **Cal. Jur.** 957.

results, each of which was an offense of violence against the person of a separate individual; and the two offenses, though resulting from the same act, were separate and distinct crimes, neither being included within the other.

[5] ID.—ONE ACT—TWO OFFENSES—SECTION 654, PENAL CODE, INAPPLICABLE.—Section 654 of the Penal Code, which provides that "an act or omission which is made punishable in different ways by different provisions of this act may be punished unaer either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other," is not applicable where the one act has two results, each of which is an act of violence against the person of a separate individual.

[6] ID.—ACQUITTAL ON ONE CHARGE—PLEA OF ONCE IN JEOPARDY.—Where, by an indictment containing two counts, defendant was charged, in count one, with an assault with a deadly weapon upon his wife with intent to commit murder, and, in count two, with the murder of another person (who was killed by the gunshot intended to kill his wife), and, having interposed a plea of "not guilty" to both counts and having moved for a separate trial upon each count, he was tried and found not guilty of the charge contained in the first count, he was not prejudiced by the refusal of the trial court to withdraw his motion thereupon made for permission to withdraw his plea of "not guilty" to the second count and to enter a plea of once in jeopardy and former acquittal.

[7] ID. — APPEAL — SUGGESTED ERRORS — INSUFFICIENT BRIEFS. — It is not sufficient for the appellant to suggest that the trial court erred in giving certain instructions and likewise in refusing certain instructions, but he should point out clearly and concisely the rulings complained of as erroneous and state in his brief the reasons why he deems them erroneous.

---

(1) 16 C. J., p. 264, n. 39.    (2) 16 C. J., p. 255, n. 38 New, p. 264, n. 45 New.    (3) 16 C. J., p. 271, n. 5, 9.    (4) 16 C. J., p. 284, n. 31 New.    (5) 16 C. J., p. 264, n. 45 New.    (6) 17 C. J., p. 824, n. 89 New.    (7) 17 C. J., p. 188, n. 54, p. 189, n. 72, 85, 86.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Carlos S. Hardy, Judge. Affirmed.

The facts are stated in the opinion of the court.

S. S. Hahn and Wm. M. Morse, Jr., for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

FINLAYSON, P. J.—Defendant was convicted of murder in the first degree and was sentenced to imprisonment for the term of his natural life. From the judgment and an order refusing him a new trial he appeals. His principal point is that he was formerly acquitted of the same offense but that he was denied an opportunity to plead such former acquittal.

The facts necessary to an understanding of appellant's chief contention are these: By an indictment containing two counts defendant was charged, in count one, with an assault with a deadly weapon upon his wife, Helen Brannon, with intent to commit murder, and in count two with the murder of one Margaret Cronin. To both counts defendant interposed the plea of "not guilty." He thereupon moved for a separate trial upon each count. His motion was granted, and the district attorney elected to try him first upon count one. That trial resulted in a verdict of acquittal. On the day set for his trial on the second count defendant moved the court for permission to withdraw his plea of "not guilty" to that count and to enter a plea of once in jeopardy and former acquittal. The motion was made with reasonable diligence after the verdict of acquittal on the first count. The court denied the motion, and thereupon defendant offered as an additional plea that of former acquittal. This offer the court refused to accept. The court thereupon proceeded with the trial of the murder charge set forth in the second count, with the result that defendant was convicted of the murder of Mrs. Cronin.

Margaret Cronin was killed by a bullet discharged from defendant's pistol. But one shot was fired. The scene of the homicide was a room in the city of Los Angeles. The only persons present at the time of the shooting were the defendant, his wife, and the deceased. According to defendant's version of the circumstances attending the killing, the pistol was accidentally discharged during a friendly scuffle and while Mrs. Cronin, with her hand in defendant's pocket, had hold of the weapon. The prosecution introduced evidence which tended to support the theory that defendant went to the room intending to kill his wife, and that unlawfully, with malice aforethought and with intent to slay Mrs. Brannon, he deliberately fired the shot at his wife, but that the bullet struck Mrs. Cronin instead, killing her. This theory is borne out by a letter, intro-

duced by the prosecution, which was written by defendant and addressed to his wife shortly before he went to the scene of the homicide. Indeed, the jury, at the People's request, was specifically instructed that where a person deliberately, and with premeditated malice, attempts to kill one person but by mistake or inadvertence kills another instead, the law transfers the intent from the object of his assault and the homicide so committed is murder. This instruction unquestionably embodies the theory upon which the case was presented to the jury by the district attorney.

From the foregoing it will be seen that, although defendant originally pleaded "not guilty," he moved for permission to interpose the plea of former acquittal as soon as practicable after the advent of those facts which he claims constituted a former acquittal on the murder charge; also that, according to the prosecution's theory of the homicide, there was but one act, i. e., one shot, and there likewise was but one intent and one volition. Thus there is squarely presented to us the question whether, if the killing occurred according to the People's theory of the case, defendant's acquittal on the first count was or was not an acquittal of the "same offense" for which he was subsequently tried and convicted.

The prohibition of the constitution is against putting a person twice in jeopardy for the "same offense." (Art. I, sec. 13. See, also, Pen. Code, sec. 1017, subd. 3.) **[1]** It is the identity of the offense, and not of the act, which is referred to in the constitutional guarantee against putting a person twice in jeopardy. The supreme court of Ohio, in an opinion of exceptional vigor and rugged forcefulness, repudiates the tendency of some courts to construe the words "same offense" as meaning the same act or transaction. "The constitutional provision," says that court in *State* v. *Rose*, 89 Ohio St. 383 [L. R. A. 1915A, 256, 106 N. E. 50], "uses the word 'offense.' Layman and lawyer alike understand the word 'offense' to here mean simply a 'crime.' . . . The words 'same offense' mean same offense, not the same transaction, not the same acts, not the same circumstances or same situation. . . . It is not enough that some single element of the offense charged may have a single element of some other offense as to which the defendant had theretofore been in jeopardy, but the constitutional provision requires that it shall be the 'same offense.' . . . Numerous decisions can be

cited to sustain the contention of the defendant as to his former jeopardy. Some of these decisions may be accounted for by a difference in the constitutional provisions, but more of them are accounted for by the fact that the courts have usurped the power of the lawmaker and the constitution maker and have added something to or subtracted something from the plain provisions of the laws and Constitution. . . . Courts too frequently fall into the very common error of assuming to interpret everything in the line of legal language. The utter folly and wholesale abuse of construing words that need no construction and of interpreting language that needs no interpretation has led to much of the judicial confusion and most of the irreconcilable diversity of court decisions. There can be no stability about law until there be certainty about law; and when the constitution maker or statute maker uses a plain phrase, a simple sentence, and a workaday word, with a clear, simple and unmistakable meaning, it is almost criminal in a court to scramble what is simple and confuse what is clear, under the mask of its right to construe.''

No question has given rise to more difficulty or conflict than that which presents itself when two or more persons are injured in person or in property by a single act. Upon this question there are two divergent lines of authority. According to one line of cases, if one act injures two or more persons there is but one offense. This doctrine has been espoused by the courts of Connecticut, Georgia, Illinois, Indiana, Iowa, Missouri, New York, Texas, Vermont and England. In the other line of cases the contrary view is adopted, and in them it is held that if, for example, an assault be committed upon two or more persons by the one discharge of a firearm, the assault, although committed by but one single act, is in law a separate crime as to each of the persons assaulted, and a prosecution for the crime committed as to one of the persons so assaulted is no bar to a subsequent prosecution for the assault upon the others. The states in which the latter view has been adopted include California and also Arkansas, Kentucky, North Carolina, South Carolina and Virginia. The jurisdictions which respectively fall within these two divergent lines of authority are given by the learned author of Van Fleet's Former Adjudication, who, in volume 2, section 622, of that work, says: ''If several persons are injured in person or property by the same

*act,* it is held in Connecticut, Georgia, Illinois, Iowa, Missouri, New York, Ohio, Texas, Vermont and England that there is but one offense; but the contrary is ruled in Arkansas, California, Kentucky, New York [probably intended for North Carolina], South Carolina and Virginia; while in Massachusetts it is decided that the state may elect to prosecute for one or for several offenses."

The view adopted by the first mentioned line of cases is well illustrated by the ruling of the Texas court in *Spanell* v. *State,* 83 Tex. Cr. 423 [2 A. L. R. 593, 203 S. W. 357]— a case upon which appellant places much reliance. There it is said that if two persons be killed by the same act, as, for example, by the single discharge of a firearm or by one stroke of a knife or other similar weapon, and there is but one intent and one volition, there is but one crime; and if the defendant be convicted or acquitted for the killing of one of the persons, he cannot be convicted for the killing of the other.

The doctrine enunciated by the other line of cases is illustrated by the decision of our own supreme court in *People* v. *Majors,* 65 Cal. 138 [52 Am. St. Rep. 295, 3 Pac. 597], where the court, after an exhaustive review of the authorities, lays down what we understand to be the established rule in this state. There the defendant had counseled and advised another to rob a certain man at his home; the emissary took with him a confederate; they found unexpectedly a friend at the home of the man to be robbed. In the attempt to carry out the robbery both the man to be robbed and his friend were killed at the same time. The defendant was convicted of murder in the case of the man who was to have been robbed, and to the indictment in the case of the friend he pleaded former conviction. The court overruled the plea, saying: " . . . we have attempted to show that the better rule, and that established by the great weight of respectable authority, is that the murder of two persons, *even by the same act,* constitutes two offenses, for each of which a separate prosecution will lie, and that a conviction or acquittal in one case does not bar a prosecution in the other." (Italics ours.) (See, also, *People* v. *Alibez,* 49 Cal. 452.)

In *State* v. *Nash,* 86 N. C. 650 [41 Am. Rep. 472], the court says: "A battery is violence done to the person of another, and though there be but a single act of violence committed, yet if its consequences affect two or more persons

there must be a corresponding number of distinct offenses perpetrated.'' In *State* v. *Thurston,* 27 S. C. (12 McMull.) 382, the defendant was charged in three separate indictments with having stolen at the same time cotton belonging to three separate individuals. The act, the intent, and the volition were one and the same. The court held (quoting from the syllabus) ''that the cotton so stolen by the defendant belonged to three different individuals, and he was very properly indicted in three cases, and a conviction in one case was no bar to a conviction in the two others. The stealing of the goods of different persons is always a distinct larceny.'' For an exhaustive review of the decisions bearing upon this question, see *State* v. *Corbitt,* 117 S. C. 356 [20 A. L. R. 328, 109 S. E. 133], where it was held that if the killing of several men by shots fired in rapid succession may be regarded as but a single act, nevertheless the result may constitute more than one offense, so that an acquittal on a trial for killing one will not prevent a prosecution for killing another. In that case the court, after quoting the constitutional provision, says: ''Note that the identity of the offense, and not of the act, is referred to. Hence, in order to claim the benefit of this protection it must be made to appear that the latter indictment contains a charge of the same offense of which the defendant may have previously been acquitted or convicted. From a common-sense layman's view there could be no hesitation in saying that the first indictment charges the murder of Bryan Salley, one distinct crime; the second, of Julian Cooper, another distinct crime. But we are expected to throw to the winds this chart and compass, and be guided by a strained technicality of the law. The law does not compel this conclusion.''

Several tests have been suggested by the courts whereby to determine when the offenses charged in two indictments are the same in ''fact and law''—the same ''act and crime.'' The test most frequently employed is that stated by Mr. Justice Buller in *Rex* v. *Vandercomb,* 2 Leach C. C. 708, in the following language: ''Unless the first indictment were such as the prisoner might have been convicted upon it by proof of the facts contained in the second indictment, an acquittal on the first indictment can be no bar to the second.'' In a criticism of this statement of the test, Mr. Freeman, in a note to *People* v. *McDaniels,* 137 Cal. 192 [92 Am.

St. Rep. 106, 59 L. R. A. 578, 69 Pac. 1006], says: ''There are, however, cases in which proof of the facts alleged in the second indictment would not convict under the first indictment, while proof of the facts alleged in the first indictment would convict under the second charge. If, in such a case, the test, as it is usually stated, is followed, we have the manifest absurdity of two indictments which may or may not charge the 'same' offense accordingly as one is charged before or after the other.''

The test as stated in *Rex* v. *Vandercomb* does not mean that there is an identity of offense simply because the proof as brought out in the *evidence* on the second charge will suffice to convict the prisoner on the first charge. The correct meaning of that test is stated by the North Carolina court in *State* v. *Nash, supra,* where it is said: ''The true test is as stated in *Rex* v. *Vandercomb:* Could the defendant have been convicted upon the first indictment upon proof of the facts, not as brought forward in evidence, but as *alleged* in the record of the second?'' (Italics ours.)

Bishop, in his work on Criminal Law (volume 1, section 1051), quoted by our supreme court in *People* v. *Majors, supra,* speaking of the identity of offenses, says: ''They are not the same . . . when the two indictments are so diverse as to preclude the same evidence from sustaining both.'' If this test be applied to the facts of the instant case, then clearly the two offenses with which appellant was charged are not the same. For, manifestly, if appellant had been tried first upon the charge of murdering Mrs. Cronin he could not have been convicted merely upon proof that he shot at his wife with intent to murder her. Proof that he killed Mrs. Cronin would also be required. Therefore an acquittal or conviction on the murder charge could not have been successfully pleaded by defendant in bar to the charge of assault upon his wife. In *Winn* v. *State,* 82 Wis. 571 [52 N. W. 775]—a case which bears a striking analogy to the instant case, except that there the murder charge was the first to be prosecuted—the defendant attempted to kill another, and in the struggle to disarm him a third person was accidentally shot and killed. The defendant, it seems, had an altercation with one Defoy in a saloon, and was assaulted by him; he went home, secured a pistol and returned; Defoy was on the sidewalk with others, including one Coates; the defendant snapped his pistol at Defoy, and in the struggle

to disarm him the weapon was discharged, killing Coates. In its statement of the facts the court said that "the revolver was either accidentally discharged, or it was intentionally fired by Winn at Defoy"—the person whom defendant intended to slay. In holding that an acquittal on the charge of murdering Coates was no bar to a prosecution for assault upon Defoy with intent to kill, the court says: "The special plea in bar of this prosecution sufficiently avers that the charge of the murder of Coates in the first information, and the charge of an assault with intent to murder Defoy in the present information, are predicated upon one and the same act of Winn. It is correctly argued in the plea, as it was at the bar, that if he committed the alleged felonious assault upon Defoy, and in doing so killed Coates, although unintentionally, he is guilty of murder. But the jury acquitted him of the crime of murder, and from that fact the inference is plausibly drawn that the jury must necessarily have negatived the alleged felonious assault upon Defoy, for otherwise they would have convicted Winn of the murder charge. It was very earnestly and ingeniously contended in argument by the learned counsel for Winn that, in substance and legal effect, such acquittal is an acquittal of the charge of felonious assault in the present information, and that by compelling the accused to trial therefor he was put twice in jeopardy of punishment for the same offense, in violation of the constitutional and statutory declaration of rights in that behalf." The court goes on to say: "We adopt as the law on this subject the rule laid down by Chief Justice Shaw in *Commonwealth* v. *Roby.* 12 Pick. (Mass.) 496. The rule is that the offenses charged in two indictments are not identical unless they concur both in law and in fact, and that the plea of *autrefois acquit* or *convict* is bad if the offenses charged in the two indictments be distinct in law, no matter how closely they are connected in fact. In order to determine whether there is a concurrence in law, that is, whether a conviction or acquittal on one indictment is a good bar to a prosecution on another, the true inquiry is whether the first indictment was such that the accused might have been convicted under it by proof of the facts alleged in the other indictment. If he could not, the conviction or acquittal under the first indictment is no bar. The result of an application of this test to the present inquiry is obvious. Winn

could not have been convicted or acquitted of the murder of Coates merely upon proof that he made a felonious assault upon Defoy. Proof that he killed Coates would also be required. Hence an acquittal on the information charging the murder of Coates is not a bar to this information for a felonious assault on Defoy, and the special plea was properly overruled.'' So here, appellant, on a trial for the murder of Mrs. Cronin, could not have been acquitted or convicted merely upon proof that he had made a felonious assault upon Mrs. Brannon.

The reasoning of the court in this Wisconsin case justifies the conclusion that an acquittal of appellant upon count two, charging him with the murder of Mrs. Cronin, had the charge in that count been the first to be brought on for trial, would not have been a bar to a prosecution upon count one, charging him with an assault upon his wife with intent to commit murder. But if an acquittal of appellant upon the murder charge would have been no bar to a prosecution of the assault charge, then, conversely, the acquittal on the assault charge cannot be a bar to this prosecution of the murder charge; for if it were, then, as was said by Mr. Freeman in his note to *People* v. *McDaniels, supra,* we would have the manifest absurdity of two counts which may or may not charge the "same" offense accordingly as one is tried before or after the other.

*Vaughan* v. *Commonwealth,* 2 Va. Cas. 273, is a case more directly in point. There the defendant, a woman, was indicted for shooting Sally Walker, the infant daughter of Jenny Walker. She was also indicted for shooting the mother. Having been acquitted on the charge of shooting the daughter, defendant entered a plea of *autrefois acquit* to the indictment charging her with the shooting of the mother. On her appeal from the sentence rendered after her conviction on the latter charge, defendant claimed that the evidence disclosed that she fired the shot at the mother with intent to disfigure her, and that the shot hit both the mother and the daughter Sally. It was held that the acquittal of defendant on the charge of shooting Sally Walker was no bar to a prosecution on the charge of shooting the mother.

[2] It is probable that had appellant been convicted of the charge of assault upon his wife, instead of having been

acquitted of that charge, we would have heard nothing of
the plea of once in jeopardy when the murder charge came
on for trial; for in that event appellant doubtless would have
recognized the established doctrine in this state that where
two or more are injured in their persons, though it be by a
single act, yet, since the consequences affect, separately, each
person injured there is a corresponding number of distinct
offenses.   But it matters not whether the trial of appellant
on the assault charge resulted in a conviction or an acquittal,
for there is no difference between the two pleas of *autrefois
convict* and *autrefois acquit*.   If one of these pleas would be
available under a given state of facts the other would be
also; and, conversely, if one would not be available neither
would the other.

Many of the decisions cited by appellant are cases where
the prosecution attempted to split up one crime and prosecute
it in several parts.   Those cases are not applicable here.
[3] It, of course, is true that if two or more offenses arise
as one result from a single act, and one of them includes
within itself all the others, as murder includes manslaughter,
then, if the defendant has been in jeopardy for the offense
which includes the others, he has been in jeopardy as to all
of the offenses; and this is often true where he has been
put in jeopardy for even the lowest of the offenses.   In such
cases more than one offense cannot be carved out of the same
unlawful act.   But that is not this case.   [4] Here, if ap-
pellant shot at his wife intending to kill her but instead
killed Mrs. Cronin, the act had two results, each of which
was an offense of violence against the person of a separate
individual.   The two offenses, though resulting from the same
act, were separate and distinct crimes, neither being included
within the other.   (See *Commonwealth* v. *Browning,* 146 Ky.
770 [143 N. W. 407].)

[5]   Appellant calls our attention to section 654 of the
Penal Code wherein it is declared that "an act or omission
which is made punishable in different ways by different pro-
visions of this act, may be punished under either of such
provisions, but in no case can it be punished under more
than one; an acquittal or conviction and sentence under
either one bars a prosecution for the same act or omission
under any other."   We do not think this section has the
broad sweep which appellant claims for it.   We do not think
it is applicable where, as here, the one act has two results
each of which is an act of violence against the person of a

separate individual. This section of the Penal Code has been in existence ever since the adoption of the codes in 1872. It never has been amended. It existed in its present form at the time of the commission of the offenses which were considered by our supreme court in the Majors case; and yet in that case the court, on page 146 of 65 Cal., after declaring that "the two crimes [the murder of Renowden and the murder of McIntyre], although committed at one time and by the same act, are entirely different in their elements, and the evidence required to convict in the one case very different from that essential to a conviction in the other," goes on to say that a separate prosecution would lie for each offense, and that a conviction or acquittal in one case would not bar a prosecution in the other. Indeed, it is now provided by our Penal Code (sec. 954, as amended in 1915) that, under separate counts of the same indictment or information, the defendant may be charged with "two or more different offenses *connected in their commission*," and that "the defendant may be convicted of *any number* of offenses [so] charged."

[6] Our conclusion from the foregoing is that appellant suffered no prejudice by reason of the court's refusal to permit him to plead former acquittal or once in jeopardy.

[7] It is suggested that the court erred in giving certain instructions and likewise in refusing certain instructions requested by appellant; but since he has not seen fit to state any reasons for the suggestion, the point is not so presented that it may now be considered. It is due to this court from counsel not only to point out clearly and concisely the rulings complained of as erroneous, but to state in his brief the *reasons* why he deems them erroneous. (8 Cal. Jur. 546.)

The judgment and the order denying a new trial are affirmed.

Works, J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 12, 1925, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 9, 1925.

All the Justices concurred.