643 P.2d 1034
**STATE of Arizona, Respondent,**

v.

**Rexford Howard GUNTER, Petitioner.**

**No. 1 CA–CR 5096–PR.**

Court of Appeals of Arizona,
Division 1, Department B.

Feb. 18, 1982.

Rehearing Denied April 6, 1982.

Review Denied April 20, 1982.

Tom Collins, Maricopa County Atty. by Steve LaMar, Deputy County Atty., Phoenix, for respondent.

Ross P. Lee, Maricopa County Public Defender by Anne Kappes, Deputy County Public Defender, Phoenix, for petitioner.

## OPINION

JACOBSON, Presiding Judge.

The major issue in this review of a post-conviction proceeding is whether a defendant's single act which subjects him to multiple criminal charges violates the double jeopardy clauses of the United States and

Arizona Constitutions as well as the double punishment statute of Arizona.

This action arises from the summary denial by the trial court of defendant Rexford Howard Gunter's petition for post-conviction relief filed pursuant to Rule 32.1, Rules of Criminal Procedure.

The defendant was originally charged with having committed two counts of assault with a caustic chemical in violation of the former A.R.S. § 13–251. On July 11, 1978, he entered a guilty plea to both counts of the indictment as charged and was sentenced to serve maximum consecutive terms of 13 to 14 years on each count. The convictions and sentences were affirmed by this court on appeal by a memorandum decision.[1] He was represented by retained counsel at the time he entered his plea and on appeal.

The facts underlying the original charges are that the defendant had been emotionally distraught for a period of time by the actions of his wife moving out of their home and starting to date Christopher Prekup. On the night of April 18, 1978, the defendant hid in a tree near the premises where his wife was staying and observed his wife and Prekup sitting in a vehicle in front of the residence. As his wife and Prekup left the vehicle and were walking arm in arm up the sidewalk, the defendant leapt from his hiding place and threw a bucket of sulfuric acid which hit both victims. As a result, the defendant's wife was severely injured, and it is contemplated that years of plastic surgery will be required to ameliorate her injuries. Prekup sustained burns on his upper torso, neck and face which have subsequently healed.

On February 26, 1980, the defendant filed a petition for post-conviction relief, claiming numerous grounds for relief. Present counsel was appointed to represent him and filed a supplement to the petition for post-conviction relief. The trial court summarily denied the petition and a timely motion for rehearing was filed which was denied. A timely petition for review to this court was filed.

In the motion for rehearing and defendant's supplement to the motion for rehearing, he has preserved a number of claims for review by this court which may be summarized as follows: (1) that he was denied effective assistance of counsel at the time he entered his plea, (2) that the consecutive sentences imposed on the defendant violate the double punishment statute and the double jeopardy clauses of the United States and Arizona Constitutions, (3) that the plea was not voluntarily and intelligently entered, and (4) that the sentence must be vacated and the case remanded for resentencing because defendant was not shown a copy of the presentence report prior to sentencing.

For his first issue, the defendant argues that he was denied effective assistance of counsel during the plea proceedings. The argument that he did not receive "reasonably competent and effective representation" is based on the assertion that counsel insisted in going on with the guilty plea in spite of petitioner's reluctance to plead guilty and petitioner's denial of the essential elements of the offenses. The record of the plea proceedings clearly belies these contentions.

At the time of the plea proceedings, the defendant denied that he had an intent to disfigure either his wife or Prekup. The court refused to take the plea and recessed the hearing which reconvened several hours later. At that time the defendant was questioned by his counsel as follows:

Q. Rex, I'm going to ask you a few questions about the indictment and comments that were made this morning. I understand that when you said "No," this morning, you misunderstood just exactly what the judge was asking you about, is that true?

A. Yes.

Q. Okay. It's siill [sic] your intent to change your plea from not guilty to guilty in this matter?

A. Yes.

1. *State v. Gunter*, 1 CA–CR 3647 (June 7, 1979).

Q. All right, Rex, the indictment charges you in count one with throwing corrosive acid with intent to injure or disfigure Christina Gunter on the 18th of April, 1978. Let me ask you, first of all, did you throw an acid on that night at Christina Gunter?

A. Yes, I did.

Q. Did you know it was acid when you threw it?

A. Yes.

Q. Did you do it with the intent to injure her?

A. Yes.

Q. And since you knew it was acid, you knew that it was a corrosive agent?

A. Yes.

Q. And so far as count two is concerned, it charges you with the same crime as against Christopher Raymond Prekup, that is, that you did throw corrosive acid with the intent to injure or disfigure; Rex, in relation to that charge you did know it was an acid?

A. Yes.

Q. And you did throw it? ·

A. Yes.

Q. And you threw it intending to hit Christina, is that correct?

A. Yes.

Q. And you knew that Mr. Prekup was there, did you not?

A. Yes.

Q. And you threw it in total disregard for his safety or welfare, didn't you?

A. Yes.

Q. You had no concern as to whether it hit him or not, is that true?

A. That's true.

Later in the proceedings, appellant stated clearly that he couldn't stand the pain his wife was causing him and he wanted to injure her and cause her pain, and that that was why he threw the acid. Finally, at the close of the proceedings the court questioned appellant as follows:

Q. All right. Has anything occurred in either of these sessions today, now, Mr. Gunter, at this point, to cause you to change your mind or do you still wish to plead guilty to both counts of the indictment?

A. No, I—I wish to plead guilty, sir.

Q. You feel that you understand the plea agreement and that you have discussed it with your attorneys as much as you need to discuss it?

A. Yes, sir.

Q. Okay. And any questions that you've got about it, you have asked them and satisfied yourself, is that correct?

A. Yes, sir.

The foregoing exchanges clearly belie the defendant's contentions as to Count One, both that he was coerced by counsel into entering his plea and that he denied the essential elements of the offense. As to Count Two, the injury to Prekup, the defendant pled guilty under the doctrine of transferred intent. Under that doctrine, the law transfers the defendant's felonious intent towards his wife to Prekup and the criminality of his act toward Prekup is the same as that directed toward his wife. The quoted exchange is sufficient to establish that intent. *See People v. Carlson*, 37 Cal. App.3d 349, 112 Cal.Rptr. 321 (1974). It is thus clear that the choice to enter the plea was the defendant's rather than counsel's, and that he admitted the essential elements of the offenses.

The defendant also contends that he was afforded ineffective assistance of counsel because he received no benefit by entering a plea of guilty to the crimes as charged rather than going to trial. As to that issue in the post-conviction proceedings, the trial court found that defense counsel's decision not to go to trial "was a tactical decision based on his attempt to downplay the facts of this case. A review of the record shows counsel acted in a diligent and competent manner in the case. The allegations made are insufficient to constitute a colorable claim of ineffective assistance of counsel." We agree. Given

the nature and extent of the injuries to the defendant's wife, a trial in this case would surely have been most arduous for all parties. Although the defendant ultimately received the maximum sentences on the offenses as charged, it is clear that his determination to enter a plea was well advised by counsel. It is well settled in Arizona that relief will be granted on the basis of ineffective assistance of counsel "only if counsel was so inept that the proceedings were reduced to a mere farce, a sham or mockery of justice." *State v. Dippre*, 121 Ariz. 596, 598, 592 P.2d 1252, 1254 (1979). Tactical decisions on the part of counsel do not, per se, constitute inadequate representation, "nor can effective representation be equated with successful representation." *Id.* We agree with the trial court's determination that the record reveals that counsel acted in a diligent and competent manner in this case.

For his second issue, the defendant contends that the consecutive sentences imposed on him constitute double punishment in violation of the former A.R.S. § 13–1641 and in violation of the double jeopardy clause of the Fifth Amendment to the Constitution. He argues that he is being punished twice for a single act of throwing the acid resulting from a single intent to injure his wife.

█ Preliminarily, the state argues that we need not address this issue because it was resolved by this court in the appeal on this matter, and hence, the defendant is precluded from raising it pursuant to Rule 32.2(a)(2), Rules of Criminal Procedure, 17 A.R.S. In our opinion, the previous appeal in this matter did not preclude the issues sought to be raised here.

We will address first the double jeopardy claim and then the double punishment claim. The issue of whether a single act which affects multiple victims can constitutionally result in multiple criminal offenses, each punished separately, was touched on in *State v. Miranda*, 3 Ariz.App. 550, 416 P.2d 444 (1966). In *Miranda*, the court briefly noted:

Pertinent authority establishes that it is the intent of the legislature which controls and that there is no constitutional prohibition against legislation which provides for multiple crimes arising from single acts against multiple victims.

*Id.* at 557, 416 P.2d at 451. Since the constitutional argument was not further expounded on in *Miranda*, we deem it appropriate to do so here.

The Fifth Amendment to the United States Constitution provides in part:

nor shall any person be subject for the same *offence* to be twice put in jeopardy of life or limb .... (Emphasis added).

A similar prohibition is contained in Article II, § 10 of the Arizona Constitution:

No person shall ... be twice put in jeopardy for the same *offense*. (Emphasis added).

There is no doubt that the courts of this nation are divided on the issue of whether a single act resulting in harm to multiple victims can constitutionally give rise to multiple prosecutions. *See, Annot*: Single Act Affecting Multiple Victims, 8 A.L.R. 4, 960 (1981). While generally the single act/multiple victim cases arise in the setting of separate multiple trials, in our opinion the divergency of results do not stem from this fact, but rather from how the courts view the constitutional term "same offense"—is the "offense" the single act of the defendant or is the "offense" the harm suffered by the multiple victims?

The case of *Vining v. State*, 66 Tex.Crim. 316, 146 S.W. 909 (1910) is illustrative of the "the act of the defendant constitutes the offense" school. In *Vining*, the defendant fired a shot intending to hit one individual but missed and hit another. In holding that the prosecution of the defendant for the crime of assault against the wounded victim barred prosecution for assault against the intended victim, the court noted that the defendant had already been "convicted of the offense which the facts show he committed." 146 S.W. at 912.

For cases in accord with this analysis, *see, Ladner v. United States*, 358 U.S. 169, 79

S.Ct. 209, 3 L.Ed.2d 199 (1958);[2] *United States v. Theriault*, 531 F.2d 281 (5th Cir. 1976); *Gunter v. State*, 111 Ala. 23, 20 So. 632 (1896); *Smith v. United States*, 295 A.2d 60 (D.C.App.1972); *State v. Houchins*, 102 W.Va. 169, 134 S.E. 740 (1926).

Some courts in focusing on the defendant's act to define the term "same offense" have held that where multiple offenses result from a single act, the definition of "offense" depends upon whether the defendant intended to cause harm to more than one victim. *Compare, Thessen v. State*, 508 P.2d 1192 (Alaska, 1973) (holding that where the defendant did not intend to harm anyone, 14 counts of manslaughter for a single act of setting fire to a hotel could not stand); with *Cooper v. State*, 595 P.2d 648 (Alaska, 1979) (holding defendant properly convicted of three offenses by firing a single shot at three people where defendant intended to injure all three).

On the other hand, numerous courts have looked, not at the act of the defendant, but at the result of that act, in defining the term "same offense." Illustrative of this line of cases and their rationale is *People v. Brannon*, 70 Cal.App. 225, 233 P. 88 (1924). In *Brannon*, the defendant intended to kill his wife, shot at her but missed and killed a bystander, Mrs. Cronin. The defendant was tried first on the assault against his wife and acquitted. At the trial for the murder of Mrs. Cronin, he entered a plea of former jeopardy which was denied and he was subsequently convicted. On appeal he urged that the conviction could not stand because of the constitutional prohibition against double jeopardy. The court noted:

> The prohibition of the Constitution is against putting a person twice in jeopardy for the "same offense." [Citations omitted]. It is the identity of the of-

fense, and not of the act, which is referred to in the constitutional guaranty against putting a person twice in jeopardy.

233 P. at 89.

Here, if appellant shot at his wife intending to kill her but instead killed Mrs. Cronin, the act had two results, each of which was an offense of violence against the person of a separate individual. The two offenses, though resulting from the same act, were separate and distinct crimes, neither being included within the other.

233 P. at 92.

The states of Florida, Indiana, Kentucky, Louisiana, Michigan, Minnesota, Mississippi, North Carolina, Oklahoma, Oregon, Tennessee, Virginia, Washington, Wisconsin and Wyoming follow this rule. *See* cases cited 8 ALR 4th at 965.

In our opinion, in this dispute, the cases which look at the result of the act, rather than the act itself, have the better of the argument.[3] The Constitution speaks of "offense." Generally, criminal "offenses" are defined in relationship to a victim, at least in the category of crime with which the defendant was charged. (Defendant was charged with violating former A.R.S. § 13–251 which provides: "A person who wilfully and maliciously ... throws ... corrosive acid with intent to injure the flesh or disfigure the body of another *person* shall be punished....") (Emphasis added). Equally, the law generally does not make the act itself criminal unless harm or potential harm results to another. Thus, conceptually, the law itself focuses on the results rather than the act. We see no reason why this focus should shift when defining the term "offense."

---

**2.** The defendant relies on *Ladner v. United States, supra.* However, in our opinion, *Ladner* was decided solely on the basis of statutory construction rather than constitutional interpretation and therefore we do not feel bound by this decision on the constitutional issues raised.

**3.** We previously indicated that the differing results reached by courts was not founded upon the procedural fact of multiple trials. In our opinion, this procedural issue may be controlling if the first trial gave rise to collateral estoppel issues applicable in the second trial. *See, Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (holding that principles of collateral estoppel are embodied within the double jeopardy clause of the United States Constitution).

Moreover, focusing on the result rather than the act serves the general policy of the law. As was stated in *People v. Lovett*, 90 Mich.App. 169, 283 N.W.2d 357 (1979):

Where crimes against persons are involved we believe a separate interest of society has been invaded with each victim and that, therefore, where two persons are assaulted, there are two separate offenses.

283 N.W.2d at 360.

Nor, are we persuaded by those jurisdictions which focus upon the intent of the defendant in determining whether multiple offenses have been committed. Such a focus in our opinion ignores the doctrine of transferred intent, now codified in A.R.S. § 13–203(B).[4]

■ We therefore hold that the constitutional prohibition against placing a person in double jeopardy is not violated under the facts here by charging and punishing the defendant for multiple injuries arising from a single act of throwing acid.

■ The defendant next claims that the consecutive sentences constitute double punishment in violation of the former A.R.S. § 13–1641. He argues that under that statute, the test is to eliminate the elements in one charge and determine whether the facts left would support the other charge. We disagree. In *State v. Warren*, 124 Ariz. 396, 604 P.2d 660 (App. 1979), this court held that the "identical elements test" is inapplicable where a defendant is charged with multiple counts based upon the same statute. We note that the courts of California adhere to the same view. The California Penal Code, § 654 (Supp.1981), is similar to the former A.R.S. § 13–1641[5] and states "[a]n act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one...." In *Neal v. State*, 55

Cal.2d 11, 9 Cal.Rptr. 607, 357 P.2d 839 (1960), *cert. denied*, 365 U.S. 823, 81 S.Ct. 708, 5 L.Ed.2d 700 (1961), the court held that where the defendant threw gasoline into the bedroom of a Mr. and Mrs. Raymond and ignited it, he could be sentenced to consecutive sentences for two counts of attempted murder, although he could not also be convicted of arson. The court noted that the conviction for both arson and the attempted murders violated the multiple punishment statute since the arson was incidental to the primary objective of killing of both victims. As to the consecutive sentences for the two attempted murder convictions, however, the court stated as follows:

The purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal liability. A defendant who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person. * * * This distinction between an act of violence against the person that violates more than one statute and such an act that harms more than one person is well settled. Section 654 is not " * * * applicable where * * * one act has two results each of which is an act of violence against the person of a separate individual."

9 Cal.Rptr. at 612, 357 P.2d at 844. We find that the former A.R.S. § 13–1641 precluded multiple prosecutions and was designed to protect persons from harassment. It was not designed to prohibit prosecution and punishment for an act which harms more than one person. We therefore reject the defendant's claim in this regard.

The defendant next alleges that his plea of guilty was not voluntarily and intelligently entered for three different reasons: (1) because it was induced by the assurance

---

4. A.R.S. § 13–203(B) provides in part:

If intentionally causing a particular result is an element of an offense, and the actual result is not within the intention or contemplation of the person, that element is established if:

1. The actual result differs from that intended or contemplated only in the respect that a different person ... is injured or affected...."

5. Now A.R.S. § 13–116, revised.

of counsel that he would receive either probation or a short prison term if he pled guilty, (2) that he was not told that the minimum sentence could be more than one year and (3) that he was under the influence of medically prescribed drugs at the time he entered his plea. As to the first two of those reasons, the record belies defendant's contentions, and suffice it to say here that the trial court did not err in summarily rejecting relief on these bases.

■ However, the third claim presents problems. In support of his claim that his plea was not voluntarily and intelligently entered because he was under medication at the time he entered the plea, the defendant has attached medical records to show that he was being treated at the time he entered his plea with chloral hydrate and serax, prescription medications. He has also filed an affidavit indicating that on July 11, 1978, the date he entered his plea, he ingested two 500 milligram chloral hydrates and one 30 milligram serax approximately one-and-one-half hours prior to the change of plea proceedings. He asserts that chloral hydrate is a sedative which diminishes the consciousness of the person ingesting the drug and that serax reduces the cognitive activity of the brain.

After the defendant's arrest, he was hospitalized for a suicide attempt. The trial court ordered a Rule 11 hearing to determine petitioner's competence at the time he committed the offenses and his competence to stand trial or enter a guilty plea. Dr. Garcia-Bunuel, M.D., concluded that petitioner was competent to stand trial and was competent to enter a plea of guilty in a report issued May 30, 1978. However, neither Dr. Garcia-Bunuel's report nor a report issued by Dr. Bayless on July 20, 1978, or a report by Dr. Dean, M.D., issued July 31, 1978, address the possible effects of the medication taken by the defendant on the date of his plea. It is clear that the medication was prescribed for the defendant following the suicide attempt, and that the medication was anti-psychotic in nature. In denying the petition for post-conviction relief as to this issue, the trial court found that petitioner had been found mentally competent to proceed under Rule 11 and that therefore the trial court did not abuse its discretion in finding the plea to be knowingly, intelligently and voluntarily made and denied the defendant's request for an evidentiary hearing concerning this issue.

A petitioner is entitled to an evidentiary hearing when he presents a "colorable claim." Such a claim is one which has the appearance of validity, that is, if the allegations are taken as true, would the result be changed? *State v. Richmond*, 114 Ariz. 186, 560 P.2d 41 (1976); Rule 32.6(c), Rules of Criminal Procedure, 17 A.R.S. The medical records which the defendant attached to his petition for post-conviction relief certainly indicate that he was taking the prescribed medication at the time he entered his plea. While the effects of that medication are unknown, the reports concerning the defendant's competency to enter a plea did not address the question of whether the influence of the medication impaired his ability to make a rational judgment or have an understanding of the consequences of the plea. In our opinion the defendant has presented sufficient evidence to constitute a colorable claim that he was under the influence of the prescribed medication on the day of the plea proceedings. Therefore the defendant was entitled to an evidentiary hearing pursuant to Rule 32.6 to determine the merits, if any, of his claim. We therefore remand this case for a hearing to determine whether the defendant's ability to make a rational judgment and understand the consequences of his plea was impaired by the influence of the medication at the time he entered the plea. If the trial court finds the defendant's cognitive abilities were so impaired, it is ordered to vacate the judgment and sentences in this cause and set the matter for trial on the original charges. If, however, the trial court finds that the defendant's cognitive abilities were not affected by the medication, the trial court is directed to certify its findings to this court forthwith.

Finally, the defendant contends that he is entitled to an evidentiary hearing concerning his claim that he did not have an opportunity to review the presentence report and correct incorrect material contained in the presentence report. First, no evidence was presented which would indicate that he was not afforded an opportunity to read his presentence report. Moreover, he makes no colorable claim that the statements alleged to be incorrect in the presentence report are in fact untrue. Also, he does not show how he has been prejudiced by the failure to read the probation report. Finally, a defendant's right to inspect a presentence report is within the discretion of the trial court. *State v. Scott*, 11 Ariz.App. 68, 461 P.2d 712 (1969). We find no error in this regard.

For the foregoing reasons, this case is remanded for further proceedings consistent with this opinion.

WREN, C. J., and ROSENBLATT, J., concur.

*NOTE*: The Honorable Paul G. Rosenblatt, Yavapai County Superior Court Judge, was authorized to participate by the Chief Justice of the Arizona Supreme Court pursuant to Arizona Const., art. VI, § 3.