## PEOPLE *v*. OCHOTSKI.

1. AGGRAVATED ASSAULT—STATUTES.
    2 How. Stat. § 9122*a*, adopted in 1883, providing for the punishment of persons who commit assaults with intent to do great bodily harm, less than the crime of murder, was designed to prescribe a more severe punishment than could be imposed under pre-existing laws for assaults committed with intent to do serious injury of an aggravated nature; and it is not essential to a conviction under such statute that the assault should have been such that, if death had resulted, the respondent would have been guilty of murder.

2. SAME—CRIMINAL INTENT—INSTRUCTIONS.
    An instruction in a prosecution under 2 How. Stat. § 9122*a*, that the prosecution is bound to prove "not only the assault, but the intent as well; not only that the respondent struck the complaining witness, but that he so struck her and inflicted the injuries with intent to do great bodily harm, less than the crime of murder,"—is sufficiently specific on the question of intent, without indicating the distinction between the offense charged and assault with intent to murder.

3. SAME—NATURE OF WEAPON—SUFFICIENCY OF INFORMATION.
    An information for an assault with intent to do great bodily harm, less than the crime of murder, which charges the offense in the words of the statute (2 How. Stat. § 9122*a*), is sufficient, without setting out the weapon with which the assault was made.

4. CRIMINAL LAW — FORMER JEOPARDY — ASSAULT — INDEPENDENT VOLITION.
    An acquittal of an assault committed upon one person is not a bar to a trial for an assault upon another in the same affray, where the injury was inflicted by a separate blow, and instigated by a different volition.

Exceptions before judgment from Wayne; Hosmer, J. Submitted November 5, 1897.  Decided January 25, 1898.

Martin Ochotski was convicted of assault with intent to do great bodily harm less than murder. Conviction affirmed.

*John G. Hawley*, for appellant.

*Fred A. Maynard*, Attorney General, and *Allan H. Frazer*, Prosecuting Attorney, for the people.

LONG, J. Respondent was convicted in the Wayne circuit court under an information charging that the respondent, "on the 17th day of May, A. D. 1896, at * * *, did assault one Rosanna Heike, in the peace of the people * * * then and there being, with intent to do her, the said Rosanna Heike, great bodily harm and pain and injury, less than the crime of murder," etc. The case comes into this court on exceptions before sentence. The information was filed under section 9122*a*, 2 How. Stat., which provides that:

"Any person who shall assault another with intent to do great bodily harm, less than the crime of murder, shall be punished by imprisonment in the state prison not more than 10 years, or by fine not exceeding $800, or by both, in the discretion of the court."

After conviction, a motion for a new trial was entered in the circuit court, and denied. This motion is incorporated in the record, and the grounds upon which a reversal of the case is now asked are embodied in the motion, and are, substantially:

1. That the court failed to instruct the jury that if they should find that the respondent committed the assault alleged in the information, with intent to commit grievous bodily harm, they must also find that said assault was committed with such an intent as would have made the respondent guilty of murder, and not merely of manslaughter, if death had ensued as a result of such assault.

2. That the court did not instruct the jury as to what intent on the part of the respondent would have rendered him guilty of murder, and what of manslaughter, if death had ensued as a result of the assault alleged.

3. That the court did not instruct the jury that, if the respondent was guilty of an unlawful assault, yet, if it was such an assault that if death had ensued the offense would have been no more than manslaughter, they could not in this case find him guilty of any greater offense than a simple assault.

4. That the court instructed the jury that the fact that respondent had been acquitted of the charge of criminal assault upon the husband of the complaining witness in the same transaction in which the respondent is charged in this case could be considered by the jury only as bearing upon his character as a man.

5. That the court did not instruct the jury that said acquittal conclusively established, as between the people and respondent, that respondent had not committed any criminal assault upon the husband of complaining witness, the undisputed testimony showing that the complaining witness intervened against the respondent on the side of her husband, while, as it was claimed on the trial, the respondent was engaged in an unlawful assault upon her husband, this being the same transaction as to which the respondent had been acquitted of any wrongful conduct.

6. That the court did not instruct the jury that it was *res adjudicata,* as between the people and respondent, that, when complainant attacked him on behalf of her husband, respondent was acting lawfully, in his own defense, and that the husband of complainant was then engaged in an unlawful assault on this respondent, and that this jury must accept the verdict of the former jury as conclusive upon that point.

7. That the court did not instruct the jury that if, according to some of the testimony, the complaining witness interfered to help her husband while he was engaged in an unlawful assault upon the respondent, she was guilty of the first unlawful assault upon the respondent.

8. That the information does not charge any higher offense than a simple assault.

9. That the verdict was contrary to the evidence.

The testimony upon the part of the people tended to show that Rosanna Heike and her husband were neighbors of respondent and his family; that respondent is a milkman, and kept eight or nine cows, and that the Heikes kept one cow; that these cows were permitted to roam at large over the commons; that on May 17, 1896, the Heike cow was in a herd with respondent's, when, respondent's daughter having separated them, the respondent commenced beating the Heike cow; that Heike went out to remonstrate with him, when respondent made an unprovoked assault upon him; that, having disabled Heike, the respondent turned

upon Mrs. Heike, and struck her a number of severe blows on the head, inflicting two scalp wounds, and another bruised, ragged wound on the neck; that he then struck her a blow on the head, knocking her down; that, when she arose, the flesh from the end of one of her fingers was scraped from the bone, the finger being broken, and that it was subsequently amputated. Mrs. Heike testified that she could not state how this injury was caused, but at the time she was struck she was holding her hands over her head to protect it while respondent was striking her with a shovel handle or club of similar appearance.

On the part of respondent there was evidence tending to show that, while the cows were being separated by respondent's wife and daughter, Mr. Heike rushed out of his house with a club to stop them from so doing; that they ran towards their house, when Heike ran in front of them; that they called to respondent for help, but, before he reached them, Heike struck respondent's wife, and when respondent came up Heike struck him, and again struck respondent's wife; that then Mrs. Heike came up and struck respondent with a piece of flooring on the back, while Heike struck him at the same time from the front; that respondent's daughter, being called to do so, ran and got some sticks for respondent, with which he defended himself from the Heikes, and ended the conflict; that respondent had his head injured in the conflict, and was so badly injured that for seven weeks he could not raise his arm; that the hands of respondent's wife were badly injured; that the injury to Mrs. Heike's finger was caused by her picking up an old tin pail, and striking respondent with it, and, as she struck, falling down and upon it. It was a matter of dispute between the parties as to which used the piece of flooring. There was also evidence given on the part of respondent that Mr. Heike had prosecuted respondent for an assault and battery, upon the same facts as are involved in this case, before a justice of the peace and a jury, which suit resulted in an acquittal.

The trial court, after reading to the jury the statute

under which the information is filed, and stating to them the law upon the question of reasonable doubt, said to them:

"Of course, in each instance in this case, where a special intent is charged,—that is, an assault with a special intent,—it is essential that the prosecution should prove not only the assault, but prove the intent as well; that is, not only prove that the respondent struck Mrs. Heike, but so struck her and inflicted the injuries with intent to do great bodily harm, less than the crime of murder."

The court, after speaking of the manner in which such intent might be shown, said further:

"If there was a blow inflicted by respondent upon Mrs. Heike, you may consider the character of what you believe to be the weapon used; you may consider the injury which was produced; you may consider the violence which you believe was used; and from that determine what intent the respondent had, if you find that he was guilty of striking the blow. When I speak of blows, I mean unlawful blows; for a person has a right, in resisting an assault and battery, to use such force as is essential to repel the assault, but he has no right, of course. to use unnecessary severity in protecting himself."

The court said in reference to the trial and acquittal of respondent for the assault and battery upon Mr. Heike:

"The fact that he was not convicted in that case undoubtedly may bear upon his character as a man,—may be considered in that regard. * * * But you are the judges of the facts in this case, and not that jury. You are the judges of whether Mrs. Heike was assaulted, and not the other jury."

Upon the question of the grade of the offense charged, the court said:

"The jury may find the respondent not guilty of the offense in the degree charged in the information, but may find him guilty of any other degree of the offense inferior to that charged, or an attempt to commit such an offense. * * * If you believe the respondent guilty of striking Mrs. Heike, but you do not believe that an intent to do great

bodily harm is made out, the offense would not be an assault with intent to do great bodily harm, but assault and battery."

We will first dispose of the questions raised by counsel in his first, second, and third claims why a new trial should have been granted. Prior to the passage of this statute, in 1883, we had a statute providing:

"If any person shall assault another with intent to commit the crime of murder, every such person shall be punished by imprisonment in the state prison for life, or any number of years." 2 Comp. Laws 1857, § 5724; 2 How. Stat. § 9088.

It has been held by this court in several cases that, to constitute the offense under this statute of assault with intent to commit the crime of murder, there must be an actual intent to kill, and that under such circumstances as would make the killing murder. *Maher* v. *People*, 10 Mich. 212 (81 Am. Dec. 781); *People* v. *Garbutt*, 17 Mich. 9 (97 Am. Dec. 162); *Roberts* v. *People*, 19 Mich. 401; *Wilson* v. *People*, 24 Mich. 410; *People* v. *Lilley*, 43 Mich. 521; *Wright* v. *People*, 33 Mich. 300. It is also held that, under this statute, it is immaterial whether the murder intended, if consummated, would be murder in the first or second degree. *People* v. *Scott*, 6 Mich. 287. Section 7092, 2 How. Stat., empowers justices of the peace to hear, try, and determine cases of assault and battery not charged to have been committed riotously, or upon any public officer in the execution of his duties, or with intent to commit any other offense. Under this statute, the punishment could be only such as a justice of the peace is authorized to inflict. There is also a general statute providing for the punishment of persons convicted of assault, or assault and battery, in cases where no other punishment is prescribed. The maximum punishment for this is one year in the county jail, or a fine not exceeding $200, or both, in the discretion of the court. 2 How. Stat. § 9103. Also, section 9086, 2 How. Stat., provides a punishment by imprisonment in the state prison for the term

of 10 years upon any person who shall assault another with intent to maim or disfigure in any of the ways mentioned in section 9085.

Prior to 1883 we had no statute providing punishment for aggravated cases of assault and battery; that is, cases where the injuries inflicted were serious and of an aggravated nature. The greatest punishment that could be inflicted was imprisonment for three months in the county jail for assault, or assault and battery, unless committed riotously, or upon a public officer in the execution of his duties, or with intent to commit some other offense, except where no punishment had been prescribed by statute, in which case the general statute prescribed the punishment at one year in the county jail, etc. These were the only punishments that could be inflicted for assault and assault and battery, however aggravated. For assault with intent to maim, or assault with intent to commit murder, severer punishments were provided; but for the intermediate offenses of assault and battery, where serious bodily injuries were intended, less than the crime of murder, no adequate punishment was provided; so that persons who were guilty of such offenses escaped punishment, except such as could be inflicted for a simple assault or assault and battery. It was to provide these severer punishments that the act of 1883 was passed.

The contention of counsel cannot be sustained that a conviction could not be had under this statute unless the jury found that the assault was committed with such an intent as would have made the respondent guilty of murder, and not merely manslaughter, if death had ensued as a result of such assault. That is not the offense sought to be punished by this statute. That offense is punishable under section 9088. Neither can counsel be sustained in his contention that, if the assault was such that if death had ensued the offense would have been no more than manslaughter, then respondent could be convicted of no greater offense than simple assault. Such a case would have come directly within this statute under which the

prosecution was had. In *People* v. *Scott*, 6 Mich. 292, it was held that an intention to take life under any circumstances which would not render the killing manslaughter, or justifiable or excusable homicide, constitutes the offense under the statute providing punishment for an assault with intent to commit the crime of murder.

We think the charge of the trial court was sufficiently specific upon the question of intent. It would not have aided the jury in their determination of the case for the court to give them the distinction between assault with intent to murder and an assault with intent to do great bodily harm, less than the crime of murder. The respondent was charged with the lesser offense, and the jury were told that no conviction could be had unless they found that in making the assault respondent intended to do great bodily harm, less than the crime of murder. The term "great bodily harm, less than the crime of murder," was defined by this court in *People* v. *Troy*, 96 Mich. 530, as an intent to do serious injury of an aggravated nature.

But counsel contends, further, that informations under this statute should set out the nature of the assault, as being done with a knife, club, pistol, etc., as the case may be; that, when an intent to do great bodily harm is the gravamen of the crime, the nature of the assault should be set out, in order that the court may be able to see upon the record that the intent charged might have been entertained, and that the result contemplated might have been effected. In *Rice* v. *People*, 15 Mich. 9, the information charged the respondent with an assault upon one Charles Parsons, with intent to kill and murder. The objection was that the information did not charge the offense to have been committed "feloniously, willfully, and of malice aforethought," after the common-law form. The information was held sufficient, under section 6059, 2 Comp. Laws 1857, being section 9539, 2 How. Stat., which provides:

"When the offense charged has been created by any statute, or the punishment of such offense has been declared by any statute, the indictment shall, after verdict, be held sufficient to warrant the punishment prescribed by the statute, if it describe the offense in the words of the statute."

The information in the present case describes the offense in the words of the statute, and we think the information sufficient, without the descriptive words which counsel contends it should have contained.

But it is contended that the record shows that respondent in another trial had been acquitted of an assault and battery upon the person of Mr. Heike growing out of the same transaction as here set out, and therefore he could not be convicted in the present case, as "no person, after acquittal upon the merits, shall be tried for the same offense." Const. § 29, art. 6. The record states that there was evidence given on the part of respondent that Heike had prosecuted the respondent for an assault and battery, upon the same facts as are involved in this case, before a jury, and that the latter was tried before a jury, and acquitted. The testimony given by respondent tends to show that Heike commenced the affray by striking respondent's wife, and that he then struck respondent, and then struck his wife again; that at this moment Mrs. Heike came up, and struck respondent in the back while Heike was striking him in front; that, while this was going on, respondent's daughter brought him a stick, with which he defended himself. The testimony of the prosecution contradicted this claim, and tended to show that the respondent was the aggressor; that, having disabled Heike, he turned upon Mrs. Heike, and struck her a number of severe blows on the head, face, and hands, breaking one of her fingers; that he struck her with a shovel handle. The court charged the jury, substantially, that the acquittal of the respondent of the assault upon Mr. Heike could not be considered by them, except as the acquittal might bear upon the character of the respondent.

We think the court below was not in error in holding that the acquittal of respondent of the assault upon Mr. Heike would not relieve him in the present proceeding. It was not a trial for the same offense, within the meaning of the Constitution. There is a difference between one volition and one transaction. While it is true that these two offenses grew out of the same affray, yet no claim is made that the same blows by which Mrs. Heike was injured were the ones which injured Mr. Heike. Bishop, in his work on Criminal Law, lays down the rule that in one transaction a man may commit distinct offenses of assault or homicide upon different persons, and be separately punished for each. 1 Bish. New Cr. Law, § 1061. This view is supported by the authorities cited by the author; and what is meant by one volition is illustrated by him as follows·

"If one, by a single volition, should discharge into a congregation of people a firearm loaded with peas for shot, and each of 50 different persons should be hit by a pea, it would be startling to. affirm that he could be punished for assault and battery 50 times." Id.

Other illustrations are given by him, which we do not deem it important to repeat. In the present case it was not the same blow, even, which caused the injury to the two, but different blows. It was the same transaction, but not the same volition. The rule laid down in the case of *Crippen* v. *People*, 8 Mich. 117, cited by counsel for respondent, we think does not apply to the present case.

The conviction must be affirmed.

The other Justices concurred.