PEOPLE *v.* HODGES.

1. CRIMINAL LAW—HOMICIDE—INDICTMENT AND INFORMATION—IN-
TENT—ASSAULT.

Under an information charging defendant with assault with
intent to kill and murder a certain person, where the evi-
dence disclosed that such person was a bystander and not
the one against whom defendant's acts were in fact di-
rected, and the jury found that defendant was guilty of
assault with intent to do great bodily harm less than the
crime of murder, defendant would have been guilty of
murder if such person had died from the assault.

2. SAME—PRESUMPTIONS.

The law presumes every person to intend the usual conse-
quences which accompany the use of the means employed
in the manner employed.

Error to Jackson; Parkinson, J. Submitted April
12, 1917. (Docket No. 159.) Decided May 31, 1917.

Charles Hodges was convicted of assault with intent
to do great bodily harm less than the crime of mur-
der, and sentenced to imprisonment for not less than
five nor more than ten years in the State prison at
Jackson. Affirmed.

*William K. Sagendorph,* for appellant.

*Nathan E. Bailey,* Prosecuting Attorney, and *M.
Grove Hatch,* Assistant Prosecuting Attorney, for the
people.

The information in this case charged respondent
with an assault upon one Edward L. Merritt with in-
tent to kill and murder said Merritt. The facts out of
which the prosecution grew were briefly as follows: In
the afternoon of August 2, 1913, respondent had sold
to one Green, a farmer, a team of horses. It appears

that after the trade was complete Green asked the opinion of one Honsinger, a blacksmith, about the horses. Honsinger made some disparaging remarks about the horses, and likewise said that respondent Hodges was a horse trader and dishonest. Resenting the acts and language of Honsinger, respondent and Honsinger shortly came to blows. A violent and somewhat protracted fight ensued in which Honsinger seems to have inflicted more punishment upon respondent, Hodges, than he received from Hodges. The men were finally separated, and did not meet again until several hours later. About seven o'clock in the evening respondent entered Schneider's saloon. Several men were in the barroom, and among them Honsinger and Merritt. Shortly after entering the saloon, respondent drew a revolver and pointed it toward Honsinger, who at the time was walking toward respondent. Respondent pulled the trigger, but no explosion followed, because the particular chamber in apposition proved to be unloaded. Almost immediately respondent pulled a second time, when an explosion followed. The bullet entirely missed Honsinger, at whom it was aimed, but lodged in the shoulder of Merritt, passing nearly through his body. It is undisputed that respondent had never seen Merritt before the moment of the shooting and bore him no ill will. Respondent pleaded not guilty to the information. At the conclusion of the case made by the people respondent, through his counsel, made a motion. This motion was understood by the trial court to be for a directed verdict upon the ground:

"That the evidence shows, if this man committed an offense at all, it was an assault upon Honsinger with intent to murder Honsinger, and it appears beyond dispute at this stage of the case that he hit and wounded Merritt when he fired the shot which was intended for Honsinger."

Counsel for defendant corrected the court, saying:

"It is my opinion, even if that were true, that the information would not necessarily or entirely fail. I think from the facts there might be a case still on this information for assault and battery, because there are some text-books which hold intent is not necessary in an assault."

In this court counsel for respondent treats his motion as one for leave to enter a plea of guilty to the charge of assault and battery. The motion, whatever it was, was denied by the court, and respondent took the stand in his own behalf. It was his claim that he drew the revolver and pointed it at Honsinger under the belief that it was unloaded and with the idea of intimidating Honsinger. He did not claim to have fired the shot in self-defense. The court charged the jury in part as follows:

"The information does not mention Mr. Honsinger, and it has been claimed here for that reason, inasmuch as all the proof on the part of the people is that the real purpose was to hit and kill or wound Honsinger, that the jury cannot consider the case. But it is the duty of the jury to take the law from the court, and I conceive it my duty, in the absence of a decision that is squarely in point in this State, to say to you that, even if his purpose in shooting was to hit Honsinger, if he did hit Merritt, doing an unlawful act in that way, he may be considered as intending the natural and probable results of his shooting, and if there was intent to kill Honsinger, but he hit Merritt, that unlawful purpose, design, or intent entertained against Honsinger will pass over and to characterize the act in shooting and hitting Merritt. Therefore you should not acquit because it is charged that he intended to kill Merritt, although the proof shows that his primary purpose, if he had any such intent at all, was to either kill or hit and hurt Honsinger. * * *

"I have already said, perhaps, in almost the same language, and I will repeat, that the charge is on its face an intent to murder Honsinger, but the pistol ball hit Merritt as a matter of fact. Merritt was in com-

pany of others. Honsinger was in company of others. They were practically in the company of each other, and there were other men there. Now, if in shooting at Honsinger and hitting Merritt, Hodges was seeking to kill or inflict great bodily harm on Honsinger, he was committing a felony, and if others stood around there, and one, not Honsinger, was hit, and, shooting in that way, it was likely and probable he might hit some of the others instead of the one he wanted to hit, then the intent to hit Honsinger, if it was the intent to kill him or do him great bodily harm less than murder, the intent passes right over to Merritt, because the jury has a right to infer that if a man does an act of that kind with a weapon of that kind he does intend whatever happens. He takes his chances whether he will hit the right fellow or not."

A single request to charge was presented on behalf of respondent as follows:

"I charge you, gentlemen, that the people cannot sustain a conviction for attempt of murder under their information; that the people's information charges Hodges with intent to murder Merritt, and the proof shows that the injuries received by him were entirely accidental; therefore Hodges cannot be convicted under this information with any offense with which an intent is coupled. Under the proofs as they now stand under the information, your verdict must be not guilty."

The jury brought in a verdict finding respondent guilty of assault with intent to do great bodily harm less than the crime of murder, under which verdict respondent was sentenced to State's prison for a maximum period of ten years and a minimum period of five years and a recommended maximum period of seven years.

The sole question raised upon this record is whether respondent under an information charging an assault with intent to kill and murder Merritt is properly convicted of the included offense of which he is found guilty, when the evidence conclusively shows that when

he fired the shot which took effect in Merritt's body, if he had any intent, it was an intent to kill or wound Honsinger.

BROOKE, J. (*after stating the facts*). The jury evidently disbelieved the claim of respondent that he pointed the revolver at Honsinger and snapped it twice with the purpose merely of intimidating Honsinger and under the belief that it was unloaded. Under the evidence in the case and the verdict found by the jury it cannot be doubted that, had Merritt died from the effect of the wound, respondent would have been guilty of murder. *Maher* v. *People*, 10 Mich. 212 (81 Am. Dec. 781) ; *People* v. *Garbutt*, 17 Mich. 9 (97 Am. Dec. 162) ; *Roberts* v. *People*, 19 Mich. 401; *Wilson* v. *People*, 24 Mich. 410; *People* v. *Lilley*, 43 Mich. 521 (5 N. W. 982). Indeed, that this would be true is admitted by counsel for respondent. The rule touching the question involved is laid down in volume 1 of McClain on Criminal Law, § 126, as follows:

"From the rule above stated with reference to inferring the intent from the act, it follows that, where a specific intent is required, it may be inferred from the doing of an unlawful act implying such intent, even though the actual intent was different. Thus, if the charge is of shooting with intent to kill A., the crime will be made out by proof of unlawfully shooting and injuring A., and it will be immaterial that defendant actually intended to kill B. and hit A. by mistake."

See, also, section 276, Id.

We are of opinion that the case at bar is governed in principle by *People* v. *Raher*, 92 Mich. 165 (52 N. W. 625, 31 Am. St. Rep. 575). There the respondent was convicted of an assault with intent to do great bodily harm less than the crime of murder upon the person of one John Peterson. Other persons besides Peterson were standing near when the respondent fired

a revolver wounding Peterson in the head. The court was requested to instruct the jury that they must find the specific intent to assault Peterson. This request was refused, and the court instructed them that, if respondent shot into the crowd *with the intention to wound any of them,* he might be convicted, notwithstanding he had no specific intent against Peterson. This court affirmed the conviction. The law presumes every person to intend the usual consequences which accompany the use of the means employed in the manner employed. *People* v. *Potter,* 5 Mich. 1 (71 Am. Dec. 763) ; *People* v. *Getchell,* 6 Mich. 496. A case very similar to the one at bar is *Dunaway* v. *People,* 110 Ill. 333 (51 Am. Rep. 686). There the court said:

"The charge is, defendant assaulted Hendrickson with intent to commit murder, and the insistence is, no such intent is shown, because the intent was to murder Hartwell. The reasoning on this branch of the case is too subtle to be adopted with safety. Undoubtedly there are cases that hold the doctrine contended for, and so many of the early text-writers wrote, but the better and more modern doctrine is against the position taken. Conceding, as is done, had the shot fired by defendant killed Hendrickson, it would have been murder, the proposition the severe wounding by the same shot would not have been done with intent to commit murder—that is, to commit the greater crime that might have been the result—finds no sanction either in reason or the analogies of the law."

See, also, *State* v. *Meadows,* 18 W. Va. 658; *Callahan* v. *State,* 21 Ohio St. 306; and 21 Cyc. p. 786.

The judgment is affirmed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred. FELLOWS, J., did not sit.