PEOPLE v. CRONK.

1. CRIMINAL LAW—EVIDENCE—BURDEN OF PROOF—JURY VERDICT—APPEAL AND ERROR.

Objection of defendant, who was convicted of assault with a dangerous weapon, that the jury's verdict was contrary to the great weight of the evidence is not well taken, since the correct standard of proof in a criminal case is evidence sufficient to convince beyond a reasonable doubt (CL 1948, § 750-.82).

2. SAME—ARRAIGNMENT—PLEA OF NOT GUILTY—WAIVER—INFORMATION.

Defendant who entered a plea of "not guilty" on arraignment on a charge of assault with intent to do great bodily harm less than murder, thereby waived irregularity, if any, of prior proceedings including a defective information (CL 1948, § 750.84).

3. APPEAL AND ERROR—JURY INSTRUCTION—CRIMINAL LAW.

Failure to include, at the end of jury instruction on assault with intent to do great bodily harm less than murder, the words

REFERENCES FOR POINTS IN HEADNOTES

[1] 30 Am Jur 2d, Criminal Law § 1168.
[2] 21 Am Jur 2d, Criminal Law §§ 446, 467.
[3] 5 Am Jur 2d, Appeal and Error §§ 891, 893, 894.
[4] 6 Am Jur 2d, Assault and Battery § 107; 53 Am Jur, Trial § 1056.
[5] 5 Am Jur 2d, Appeal and Error § 623.
[6] 6 Am Jur 2d, Assault and Battery §§ 97, 99.

"when thus accompanied" *held,* not reversible error, where the import of the instruction could be understood without such words (CL 1948, § 750.84).

4. CRIMINAL LAW—ASSAULT WITH A DEADLY WEAPON—VERDICT FAILING TO SPECIFY PERSON ASSAULTED.

Jury's general verdict, which resulted in conviction of assault with a dangerous weapon but failed to specify which of the 4 victims named in the information were assaulted, *held,* valid, as neither statute nor case law requires the jury to specify the person or persons assaulted (CL 1948, § 750.82).

5. SAME—INSTRUCTIONS—FAILURE TO OBJECT.

Failure of trial court, in case of assault with intent to do great bodily harm less than murder, to give instructions requiring specification as to intent to assault and actual assault toward each of the victims named in the information *held,* not reversible error, where defense counsel did not raise objection, when given opportunity, to the trial court's failure to give such instructions (CL 1948, § 750.84).

6. SAME—INTENT—ASSAULT—PREVIOUS RELATIONS.

Prosecution may show that the previous relations between the parties were not friendly or that they had difficulties with each other, and specific acts of that character may be given in evidence between defendant and a person assaulted or person intended to be assaulted where intent is essential to the offense of assault with intent to do great bodily harm less than the crime of murder (CL 1948, § 750.84).

Appeal from Ionia; Bebeau (Leo B.), J. Submitted Division 3 November 7, 1967, at Grand Rapids. (Docket No. 3,360.) Decided March 20, 1968.

Glenn Lewis Cronk was convicted of assault with a dangerous weapon. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Walter M. Marks,* Prosecuting Attorney, for the people.

*Stuart J. Dunnings, Jr.,* for defendant.

Holbrook, J.  On April 18, 1966, at about 12:47 a.m., approximately 12 bullets (.22 caliber longs) were fired from a car at the residence of Leora Tate and her 5 children in the city of Ionia, Michigan. Thereafter, Glenn Lewis Cronk, defendant herein, was arrested and charged with committing assault with intent to do great bodily harm less than the crime of murder.[1]  He was found guilty by a jury of an included offense, assault with a deadly weapon,[2] and sentenced to the term of 1-1/2 to 4 years.  Defendant's appeal to this Court arises from the trial court's denial of his motion for a new trial.

The following pertinent facts appear in the trial record:  Defendant kept company with Mrs. Tate on a fairly regular basis.  Because of his unruliness, violence, and squabbling, Mrs. Tate broke off the relationship some time prior to April, 1966.  Thereafter she avoided defendant.  Leora Tate's oldest son, Larry, testified to incidents indicating animosity between defendant and his mother, defendant and his brother, Gary, and defendant and himself.

On Sunday evening, April 17, 1966, while in the company of another man, Mrs. Tate encountered defendant in the Silver Dollar Tavern in Ionia sometime after 8 p.m.  Shortly thereafter, Mrs. Tate and her companion left the Silver Dollar Tavern and went to another tavern in Greenville, Michigan, her whereabouts then unknown to defendant.

Having been barred from the Silver Dollar Tavern about the time of Mrs. Tate's departure, defendant telephoned the tavern around 10:30 p.m. and asked his friend Richard Neilson to meet him at Renucci's Tavern, located a few blocks away.  After several drinks at Renucci's, the 2 men went to the Riverview Tavern in Lowell, Michigan.  These taverns are

---

[1] CL 1948, § 750.84 (Stat Ann 1962 Rev § 28.279).
[2] CL 1948, § 750.82 (Stat Ann 1962 Rev § 28.277).

about 15 miles apart or 15 to 20 minutes driving time. They returned to Ionia "after 12" according to the testimony of Neilson, who dropped defendant off at Renucci's Tavern where defendant had left his car. Jerry Albright, defense witness, testified that he had seen defendant at the Riverview Tavern in Lowell after 12 midnight but would not swear to any later than 12:10 a.m.

Larry Shattuck testified that "about 13 minutes to 1", during the early morning of April 18, he heard 6 or 7 shots in rapid succession and on going to a window observed a car moving slowly along the street to the south of the Tate residence. While he was looking out the window an additional 4 or 5 shots were fired at the Tate residence from the car. At the time of the shooting, 3 of Mrs. Tate's children and a friend of theirs were in a lighted room facing the street.

Defendant, according to Neilson, borrowed $3 and gave Neilson a rifle as security sometime between 1:30 and 2 a.m. the same morning in the parking lot of the Silver Dollar Tavern. The tavern is a mile or more from the Tate residence.

Officer Robert Cusack of the Ionia city police investigated the shooting at the Tate residence. While he was there, one of the children observed a car passing and identified it as "the car." Officer Cusack followed "the car" and stopped a car which defendant was driving. While he was being questioned by the police officer, several empty shells fell from the car. At trial, a ballistics expert of the Michigan State police scientific crime detection laboratory testified that in his opinion, after examination and comparison, the empty shells and those found later near the Tate residence were fired from people's exhibit No 4, a ".22-caliber Stevens-Savage semi-automatic rifle, model 87-D." A telescopic sight was

mounted on people's exhibit No 4, the rifle, which Neilson obtained as security for his loan to defendant. The ballistics expert also testified that in his positive opinion a slug found in the Tate house had been fired from people's exhibit No 4.

Two of the questions presented by defendant can be disposed of summarily in the following manner: (1) our statement in *People* v. *Fred W. Thomas* (1967), 7 Mich App 519, at p 539, is quoted here in answer to defendant's contention that the jury's verdict was contrary to the great weight of the evidence.

"In *People* v. *Washington* (1966), 4 Mich App 453, p 456, this Court stated:

" 'The last assignment of error reiterates an incorrect standard of proof, asserting the verdict is against the great weight of evidence. The correct standard in a criminal appeal is evidence sufficient to convince beyond a reasonable doubt. *People* v. *Williams* (1962), 368 Mich 494.' "

Our review of the instant record clearly indicates sufficient evidence present, if believed by the jury, to justify a finding of guilt beyond a reasonable doubt. (2) Defendant entered a plea of "not guilty" on arraignment, thereby waiving irregularity, if any, of prior proceedings, and therefore, the trial court did not lack jurisdiction because of a claimed defective information.[3] *People* v. *Jury* (1930), 252 Mich 488; *People* v. *Gant* (1966), 4 Mich App 671, 674.

Defendant asserts error because the words "when thus accompanied" were not given at the end of the following instruction:

"It is the intent with which the injury is attempted that constitutes the material element of assault with the intent to do great bodily harm less than murder. And when the intent is shown that which would

---

[3] The children's names were not mentioned in the complaint and warrant but were added in the information.

only be an assault unaccompanied with a felonious intent, would be an assault with an intent to do great bodily harm, less than the crime of murder." See, *People* v. *Troy* (1893), 96 Mich 530, 536.

In this instance, we do not find the omission of these words to constitute reversible error since the import of the instruction can be understood without them.[4] Furthermore, the trial judge later spelled out in detail the essential element of intent with regard to the crime of assault with intent to do great bodily harm less than the crime of murder, as follows:

"Now, with regard to this intent, I said the prosecutor had to prove this assault, plus an intention on the part of the person accused to commit an act which would result in serious bodily harm, less than murder    *    *    *

"Both the commission of the act, that's the assault, and the criminal intent with which it is committed must unite to constitute the offense. You've got to have the assault; you've got to have, on the other hand, the intent to commit this offense, and both combined constitute the offense. Both must be proven in such cases."

In citing the case of *People* v. *Durham* (1912), 170 Mich 598, defendant argues that the jury's general verdict is void because it fails to specify which of the 4 named victims were assaulted. He also asserts as error the trial court's failure to give instructions requiring specification as to an intent to assault and actual assault towards each of the named victims.

The evidence indicates that defendant intended to harm Leora Tate. However, although defendant thought she was present, she was not within the house at the time of the shooting and therefore

---

[4] Apparently the instructions were understood by the jury, *i.e.*, it did not find the specific intent charged but did find the general intent to do harm from defendant's act.

could not have been assaulted. The jury was aware of this fact. The uncontradicted testimony of Larry Tate was that he, his brother and sister, and a friend were in the house at the time of the shooting. Thus, the question of the crime as charged still remained in the case, *i.e.*, Larry Tate and the other children were within the house at the time of the shooting and animosity had existed at one time or another between them and defendant. The return of the general verdict of guilty went to an included offense committed and was based on everything well charged in the information. 23A CJS, Criminal Law, § 1393, p 1055. We do not read the *Durham Case* as requiring specification as to the person or persons assaulted[5] even though the jury in that case chose to do so. In any event, no case law or statute mandating the procedure has been presented to us.

No proposed instructions setting forth the specification now desired were given the trial judge. Nor did defense counsel raise objection, when given opportunity, to the trial court's failure to give such instructions. We find that the instructions given were eminently fair and proper, and stated the elements of the offense charged[6] and the included offenses correctly.

In a final issue of merit, defendant claims error in the admission of testimony of "previous assaults" of defendant towards Leora Tate. The position of the prosecution was that defendant believed Leora

---

[5] Michigan, unlike California (see *People* v. *Plumlee* [1960], 177 Cal App 2d 224, 2 Cal Rptr 84), does not take the view that "with respect to crimes against persons, including an assault, although there is but a single act or intent, there are as many crimes as there are persons affected as victims." 6 Am Jur 2d, Assault & Battery, § 56, p 53. In this connection, see *People* v. *Ochotski* (1898), 115 Mich 601, 610.

[6] CL 1948, § 750.84 (Stat Ann 1962 Rev § 28.279) states that "any person who shall assault *another* with intent to do great bodily harm, less than the crime of murder, shall be guilty of a felony." (Emphasis supplied.) This portion of the statute was read and explained to the jury by the trial court in the charge.

Tate to have been in the house at the time of the shooting and even though in fact she was not, it was permissible to show a specific intent on the part of defendant. We agree. *People* v. *Deitz* (1891), 86 Mich 419, 425 stands for the unchanged principle that the prosecution may show "that the previous relations between the parties were not friendly, or that they had had difficulties with each other, and specific acts of that character may be given in evidence between the defendant and the person assaulted [or person intended to be assaulted] * * * where intent is essential to the offense charged".[7] In any event, no harm resulted to defendant from the admission of such testimony for it had to do with the proofs concerning the main charge for which defendant was not convicted.

Affirmed.

LESINSKI, C. J., and BURNS, J., concurred.

---

[7] Giving as support *People* v. *Reycraft* (1909), 156 Mich 451; 6 CJS, Assault & Battery, § 116, states at p 979, that "as a general rule, evidence of the fact of former difficulties and of ill feeling between accused and the [intended] victim of the assault is admissible as bearing on the question of intent."