PEOPLE v LOVETT

Docket No. 77-3490. Submitted November 3, 1978, at Lansing.—Decided May 21, 1979. Leave to appeal applied for.

Defendant, John H. Lovett, was convicted, on his pleas of guilty, of two counts of assault with intent to do great bodily harm less than murder in the Monroe Circuit Court, James J. Kelley, Jr., J. The incident giving rise to the convictions was that defendant fired a pistol at Morris Cheatham with intent to hurt but not kill him. The bullet struck Troy Barbier. Defendant appeals attacking the doctrine of transferred intent, the multiple convictions and the voluntariness of his pleas. *Held:*

1. The doctrine of transferred intent rests on the principal that, in specific intent crimes, it is only necessary that the special state of mind exist, not that it be directed at a particular person.

2. Under the facts, the two convictions were proper.

3. A trial judge, in accepting a plea of guilty, is required to explain to the defendant and determine that the defendant understands the general nature of the charge but is not required to explain the elements or the substantive law applicable to the charge; the trial judge committed no error in accepting a plea of guilty after explaining to defendant that he was charged with assaulting Troy Barbier with intent to do great bodily harm less than murder where defendant indicated he understood the charge and its nature.

4. A trial judge commits no reversible error in accepting a plea of guilty by eliciting the factual basis for the plea prior to informing defendant of his constitutional rights.

Affirmed.

M. F. CAVANAGH, J., dissented with respect to the propriety of the multiple convictions. He would hold that defendant had

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 5] 21 Am Jur 2d, Criminal Law §§ 82, 83.
[2] 6 Am Jur 2d, Assault and Battery §§ 53, 56.
[3] 21 Am Jur 2d, Criminal Law § 487.
[4] 21 Am Jur 2d, Criminal Law §§ 223, 484 *et seq.*

only one volition in aiming the gun and had committed only one assault.

OPINION OF THE COURT

1. CRIMINAL LAW — SPECIFIC INTENT — TRANSFERRED INTENT.

The doctrine of transferred intent rests on the principle that, in specific intent crimes, it is only necessary that the specific state of mind exist, not that it be directed at a particular person.

2. CRIMINAL LAW — ASSAULT — MULTIPLE CONVICTIONS — SINGLE ACT.

A criminal defendant who fired a pistol at "A" with intent to do to "A" great bodily harm less than murder and hit "B" is properly convicted of two counts of assault with intent to do great bodily harm less than murder.

3. CRIMINAL LAW — PLEA OF GUILTY — NATURE OF THE CHARGE.

A trial judge, in accepting a plea of guilty, is required to explain to a defendant and determine that the defendant understands the general nature of the charge but is not required to explain the elements or the substantive law applicable to the charge.

4. CRIMINAL LAW — PLEA OF GUILTY — FACTUAL BASIS.

A trial judge commits no reversible error in accepting a plea of guilty by eliciting the factual basis for the plea prior to informing defendant of his constitutional rights.

DISSENT BY CAVANAGH, J.

5. CRIMINAL LAW — ASSAULT — MULTIPLE CONVICTIONS — SINGLE ACT — SINGLE VOLITION.

*A criminal defendant who fired a pistol at "A" with intent to do to "A" great bodily harm less than murder and hit "B" is properly convicted of only one count of assault with intent to do great bodily harm less than murder with respect to "B"; a second conviction with respect to "A" is improper.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Michael W. LaBeau,* Prosecuting Attorney, and *William P. Godfroy,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender Office (by *Derrick A.*

*Carter,* Assistant Defender, and *Ronald J. Bretz,* Research Attorney), for defendant on appeal.

Before: M. J. KELLEY, P.J., and J. H. GILLIS and M. F. CAVANAGH, JJ.

J. H. GILLIS, J. Defendant appeals from his plea-based conviction of two counts of assault with intent to do great bodily harm less than murder. MCL 750.84; MSA 28.279. Four issues are raised for our consideration.

The case arises out of a shooting incident. Defendant fired a pistol at Morris Cheatham but the bullet missed him and hit Troy Barbier, who was standing across the street.

Defendant first attacks the doctrine of "transferred intent", claiming it unconstitutionally shifts the burden of proof to the defendant because intent is presumed.

The doctrine of transferred intent has been explained as follows:

"In the unintended-victim (or bad-aim) situation—where A aims at B but misses, hitting C—it is the view of the criminal law that A is just as guilty as if his aim had been accurate. Thus where A aims at B with a murderous intent to kill, but because of a bad aim he hits and kills C, A is uniformly held guilty of the murder of C. And if A aims at B with a first-degree-murder state of mind, he commits first degree murder as to C, by the majority view. So too, where A aims at B with intent to injure B but, missing B, hits and injures C, A is guilty of battery of C." LaFave & Scott, Handbook on Criminal Law, ch 3, § 35, p 252-253.

The doctrine has been applied in Michigan in facts very similar to those in the case at bar. In *People v Hodges,* 196 Mich 546; 162 NW 966 (1917), the defendant was involved in a fight with

one Honsinger. Several hours later the defendant entered a bar, pointed a revolver at Honsinger and, on the second attempt, fired. The bullet missed Honsinger and struck a bystander in the shoulder. Defendant was charged with assault with intent to kill the bystander and was convicted by a jury of assault with intent to do great bodily harm less than murder. The Supreme Court affirmed the conviction relying upon the doctrine of transferred intent.

Defendant claims that the doctrine is based on an impermissible presumption of intent. This is not true. Before defendant can be convicted it must first be shown that he had the intention to cause great bodily harm to someone. Merely because he shot the wrong person makes his crime no less heinous. It is only necessary that the state of mind exist, not that it be directed at a particular person. See *State v Gardner,* 57 Del 588; 203 A2d 77 (1964), *Medina v People,* 133 Colo 67; 291 P2d 1061 (1956).

Here, defendant admitted he shot at Cheatham intending to hurt him but not to kill him. This is the requisite *mens rea* of the crime of assault with intent to do great bodily harm less than murder. *People v Montgomery,* 43 Mich App 205; 204 NW2d 82 (1972).

Defendant also claims that he cannot be convicted of two counts of assault since he only did a single act with specific intent to injure one person.

The cases are split on this issue. Some states hold that where a single shot is fired at a group of people there is only one offense.[1] Other states have held that, with respect to crimes against persons such as assault, "although there may be but one act or intent, there are as many crimes as there

[1] See annotations, 2 ALR 606; 20 ALR 341; 113 ALR 222.

are persons affected" as victims. *People v Plumlee,*
177 Cal App 2d 224, 227; 2 Cal Rptr 84 (1960).[2]

In Michigan there appears to be no case which
completely resolves this issue. In *People v Raher,*
92 Mich 165, 166; 52 NW 625 (1892), the Supreme
Court stated:

"It has been held that where a prisoner fired a gun in
the direction of a crowd he was guilty of an assault
upon each. *State v Nash,* 86 NC 650; *State v Myers,* 19
Iowa, 517; *Smith v Com,* 100 Penn St 324."

However, in *People v Ochotski,* 115 Mich 601,
610; 73 NW 889 (1898), a contrary statement was
made when the Court, quoting from Bishop on
Criminal Law, said the following:

"If one, by a single volition, should discharge into a
congregation of people a firearm loaded with peas for
shot, and each of 50 different persons should be hit by a
pea, it would be startling to affirm that he could be
punished for assault and battery 50 times."

Neither of these cases involved the precise issue
before this Court. In *Raher* defendant fired a gun
at a group of people, injuring one of them. The
issue was whether it had to be shown that defen-
dant had specific intent to harm the person hit.
The Court held that it was only necessary that the
defendant have specific intent to cause great bod-
ily harm to one of the people in the group. While
the Court relied upon the theory that there are as
many assaults as there are victims, the defendant

---

[2] See also, *State v Harris,* 78 Wash 2d 894; 480 P2d 484 (1971), *rev'd
on grounds of collateral estoppel,* 404 US 55; 92 S Ct 183; 30 L Ed 2d
212 (1971), (three persons injured, two of them fatally, by explosion of
a bomb), *Gordon v State,* 503 P2d 917 (Okla 1972), *State v Taylor,* 185
Wash 198; 52 P2d 1252 (1936), *State v Fredlund,* 200 Minn 44; 273
NW 353 (1937), *People v Brannon,* 70 Cal App 225; 233 P 88 (1924).

in that case only faced a single count. Hence, the quoted statement is only dictum.

In *Ochotski,* the defendant, in the course of a single fray, delivered separate blows to two people. The Court held that defendant could be charged with two assaults because they involved distinct "volitions". This case has been cited for the proposition that Michigan does not subscribe to the "as many crimes as victims theory". See *People v Cronk,* 9 Mich App 606, 612, fn 5; 157 NW2d 802 (1968). However, since the case involved multiple blows the above quotation from Bishop must also be considered dictum

While all charges arising out of a single transaction must be tried at one time, *People v White,* 390 Mich 245; 212 NW2d 222 (1973), a person, by a single act, can violate more than one criminal statute and thus be found guilty of multiple offenses. *People v Hanna,* 85 Mich App 516; 271 NW2d 299 (1978).

Where crimes against persons are involved we believe a separate interest of society has been invaded with each victim and that, therefore, where two persons are assaulted, there are two separate offenses.

Furthermore, even though the doctrine of transferred intent is involved in this case the result is not altered. In *People v Carlson,* 37 Cal App 3d 249; 112 Cal Rptr 321 (1974), defendant killed his pregnant wife and was found guilty of manslaughter with respect to her death. The court indicated that, assuming defendant had no intention of killing the fetus, he could, through the application of the doctrine of transferred intent, be found criminally liable for both his wife's death and the death of the fetus:

"Under the rationale of the cases cited there can be

no doubt that the doctrine of 'transferred intent' applies even though the original object of the assault is killed as well as the person whose death was the accidental or the unintended result of the intent to kill the former. * * * [E]ach victim of the attack is to be viewed individually and without regard to which in fact died.

* * *

"Accordingly, in the present case in the application of the doctrine of transferred intent, the law would transfer defendant's felonious intent to kill his wife to the fetus and the criminality of defendant's act toward the fetus would be the same as that directed to his wife. Therefore, under the doctrine of transferred intent if defendant was guilty of the killing of his wife without malice, i.e., voluntary manslaughter * * *, he would normally be guilty of the voluntary manslaughter of the fetus." 37 Cal App 349, 357.[3]

Applying this rationale to the instant case we conclude that defendant was properly found guilty of two counts of assault with intent to do great bodily harm less than murder.

The third issue raised by defendant concerns the voluntary nature of defendant's plea of guilty to the second charge. Defendant contends that because the doctrine of transferred intent was not explained his plea was not knowingly and understandingly made.

The trial court is required to inform the defendant and determine that he understands the general nature of the charge. The judge is not obli-

---

[3] Because of an anomoly of law defendant escaped liability for the death of the fetus. California has amended its laws to make murder of a fetus a crime. However, no similar provision was made for manslaughter. Hence, had defendant been found guilty of murdering his wife he would also have been guilty of murdering the fetus. Since he was only found guilty of manslaughter, no crime was committed against the fetus. The court also rejected the prosecution's attempt to apply the felony-murder rule.

gated to explain the elements of the offense. It would be unrealistic to impose on the judge the obligation to impart to a defendant the substantive law applicable to his case. *Guilty Plea Cases,* 395 Mich 96, 115, 116; 235 NW2d 132 (1975).

Here, the trial court informed defendant that he was charged with assaulting Troy Barbier with intent to do great bodily harm less than murder. Defendant replied affirmatively when asked whether he understood the charge and the nature of the charge. Thus, the judge properly complied with the requirements as set forth in *Guilty Plea Cases, supra.*

Defendant's final claim of error concerns the manner in which defendant's plea was taken. The trial court asked defendant to explain the factual basis of the plea before informing him of his constitutional rights.

While the better practice would be to advise defendant of his rights before eliciting the factual basis of the plea, in *People v Peterson,* 62 Mich App 258; 233 NW2d 250 (1975), the reverse sequence was held not to constitute reversible error.

Affirmed.

M. J. KELLY, P.J., concurred.

M. F. CAVANAGH, J., *(dissenting).* I must dissent from the majority's conclusion that this defendant can be convicted of two specific intent assaults. My brothers' analysis draws heavily from California precedent which has always adopted the theory that there are as many crimes as there are victims. See *People v Carlson,* 37 Cal App 3d 349; 112 Cal Rptr 321 (1974), cited in the majority opinion. This conclusion is clearly a policy choice on the part of the California courts that finds little, if any, support in Michigan case law.

The case of *People v Ochotski,* 115 Mich 601; 73 NW 889 (1898), treats this issue in the context of a double jeopardy discussion. That case involved an altercation between the defendant and a husband and wife. The defendant struck and injured both. He was initially prosecuted for and acquitted of assault and battery as to the husband. Following conviction for his assault upon the wife, defendant claimed on appeal that his acquittal as to the husband, arising from the same transaction, barred his prosecution for the assault on the wife. The Court disagreed by distinguishing "one transaction" in which an individual may, by separate acts (each caused by a separate volition), commit distinct offenses and "one volition" that causes two harms. The *Ochotski* Court, in fact, suggested that if the same blows had injured both victims, then the defendant had only one volition that could be punished, (or, alternatively, that his prior acquittal barred his subsequent prosecution). The Court illustrated the "one volition" theory by the following example:

> "If one, by a single volition, should discharge into a congregation of people a firearm loaded with peas for shot, and each of 50 different persons should be hit by a pea, it would be startling to affirm that he could be punished for assault and battery 50 times." *Id.,* p 610.

My brothers would characterize the statements in *Ochotski* as dicta. I disagree, since the discussion was necessary to the resolution of the double jeopardy issue. Under this rationale, therefore, I would hold that this defendant had one volition in aiming the gun and committed one assault only. This view finds support from the authors of the Michigan Standard Criminal Jury Instructions. See CJI 17:1:05 and commentary at 17-13 and

*People v Cronk,* 9 Mich App 606, 612, fn 5; 157 NW2d 802 (1968).

I do not dispute that it is appropriate to utilize the doctrine of transferred intent as to the unintended victim. The defendant, when he fired at B (the intended victim) and hit C (the actual victim), may be convicted of assault with intent to do great bodily harm on C. The use of transferred intent in this situation is accepted in Michigan. *People v Hodges,* 196 Mich 546; 162 NW 966 (1917). It is really unclear under Michigan law, whether, having transferred the intent, the defendant commits any crime towards B (the intended victim). Under the "one volition" theory he can only be punished for the one assault. I would further note that when one views the purpose of the doctrine of transferred intent it appears that it is unnecessary to find the defendant guilty of a crime towards B. The purpose of the doctrine is to make the completed crime exactly what it would have been if the intended victim had in fact been injured or killed. *People v Carlson, supra.* By a conviction for the assault on C, this aim is achieved. For these reasons I would vacate the conviction under one of the assault counts here involved.

I concur with the majority's disposition of the remaining issues.