

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1054-07

**SHELDON ROBERTS, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE SIXTH COURT OF APPEALS
## DALLAS COUNTY

**HERVEY, J., filed a dissenting opinion in which KELLER, P.J., and KEASLER J., joined.**

## DISSENTING OPINION

The issue in this case has become whether "transferred intent" principles, codified in Section 6.04(b)(2), TEX. PEN. CODE, apply in a multiple-victim capital-murder prosecution[1] when the defendant murders his intended victim and an unintended victim (in this case a mother and her unborn child). Over thirteen years ago, this Court in a six-judge majority opinion settled this issue

---

[1] *See* § 19.03(a)(7)(A), TEX. PEN. CODE, (person commits capital murder if person intentionally or knowingly murders more than one person during the same criminal transaction).

in more than "one short paragraph"[2] and construed Section 6.04(b)(2) to permit the application of "transferred intent" principles in such a case. *See Norris v. State*, 902 S.W.2d 428, 436-39 (Tex.Cr.App. 1995) (McCormick, P.J., joined by White, Overstreet, Meyers, Mansfield and Keller, JJ.).[3] Saying now that this six-judge majority opinion was incorrectly reasoned, the Court overrules it and adopts much of the reasoning of Judge Clinton's one-judge concurring opinion in *Norris*.[4] *See* Maj. op. at 14 (the "fallacy of *Norris*" is that "it permits the intent to cause one intentional or knowing death to support two deaths, one intentional and knowing, the other unintentional").

The holding in the majority opinion in *Norris* was based on the language of Section 6.04(b)(2) and it also relied on the "anomalous" results of Judge Clinton's construction of Section 6.04(b)(2), at least as it applied to a multiple-victim capital-murder prosecution. The majority opinion in *Norris* noted that under Judge Clinton's concurring opinion in *Norris*:

> [T]he result would be that a defendant, who intentionally murders his spouse and "accidentally" kills several bystanders, could *not* be prosecuted for capital murder because he murdered his intended victim. However, a defendant who with the intent to murder his spouse fails to murder his spouse but "accidentally" kills several bystanders could be prosecuted for capital murder, even though he killed less people

---

[2] *But see* Maj. op. at 13 (erroneously claiming that analysis of transferred intent issue in *Norris* is "one short paragraph").

[3] Two of the judges participating in the decision in *Norris* did not vote on the merits of the "transferred intent" issue. *See Norris*, 902 S.W.2d at 448 (Maloney, J., concurring in the result) and at 451-52 (Baird, J., concurring only in the judgment). Thus, six out of the seven judges, who considered the merits of this issue in *Norris*, decided that transferred intent principles apply in cases like this.

[4] *See Norris*, 902 S.W.2d at 448-51 (Clinton, J., concurring only in result) (noting that majority's holding on "transferred intent" issue was "entirely necessary to the majority's disposition of the appeal" and stating that "transferred intent" principles in Section 6.04(b)(2) should not apply when defendant in a single act kills intended victim and an unintended victim).

than in the above hypothetical for which he could not be prosecuted for capital murder. The Legislature did not intend such anomalous results when it enacted [the statute making it capital murder to murder more than one person during the same criminal transaction].

*See Norris*, 902 S.W.2d at 438 (emphasis in original).[5]

A consideration of the consequences of a particular construction of a statute is an accepted, and not a flawed or fallacious, method of statutory construction. *See Norris*, 902 S.W.2d at 438 (in construing a statute, court may consider consequences of a particular construction whether or not the statute is considered ambiguous); § 311.021(3), TEX. GOV'T CODE, (in enacting a statute, it is presumed that Legislature intended a just and reasonable result); § 311.023(5), TEX. GOV'T CODE, (in construing a statute, a court may consider consequences of a particular construction); *see also Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Cr.App. 1991) (court will not follow plain meaning of a statute if doing so would lead to "absurd" consequences that Legislature could not have intended). And the construction of Section 6.04(b)(2) in Judge Clinton's concurring opinion in *Norris* would have allowed the "anomalous" results discussed in *Norris*, since Judge Clinton's concurring opinion would have supported a decision that "transferred intent" principles in Section 6.04(b)(2) would

---

[5]    It should also be noted that each of these hypothetical defendants in *Norris* has the same culpable mental state (each having the intent to murder their spouse). This should be considered significant because the usual rationale (and the one essentially relied upon in the Court's opinion in this case) for not applying "transferred intent" principles when a defendant murders his intended victim and an unintended victim is that it is "simply unjust" to treat this defendant as "equally culpable" with the defendant "who commits two acts intending to kill two people." *See* Elizabeth F. Harris, *The Maryland Survey: 1995-1996: Recent Decisions: The Maryland Court of Appeals* 56 Md. L. Rev. 744, 758-60 (1997). This rationale is debatable (as, for example, the unintended dead victim, as well as individual legislators debating the issue, might quite reasonably consider both of these hypothetical defendants equally culpable). In any event, this debatable rationale does not apply to the hypothetical defendants in *Norris* since each is equally culpable (each having the intent to murder their spouse).

permit the murderous intent of the hypothetical defendant, who fails to murder his intended victim, to be transferred to **all** of the innocent bystanders.[6]

This would be consistent with the plain language of Section 6.04(b)(2) since each innocent bystander is a "different person" under Section 6.04(b)(2). S*ee Norris*, 902 S.W.2d at 450-51 (Clinton, J., concurring only in result) (court should follow plain language of Section 6.04(b)(2)); *see also* § 6.04(b)(2) (person is criminally responsible "for causing a result if the only difference between what actually occurred and what he desired" is that a "different person" was harmed); § 311.012(b), TEX. GOV'T CODE, (singular in a statute includes the plural and the plural includes the singular). Under Judge Clinton's concurring opinion in *Norris*, the hypothetical defendant who murdered less people would be subject to the death penalty while the hypothetical defendant who murdered more people would not. It cannot fairly be said that the majority opinion in *Norris* was erroneously reasoned for rejecting this construction of Section 6.04(b)(2).[7]

It is also relevant that the majority opinion in *Norris* finds support from other out-of-state

---

[6]

Judge Clinton's concurring opinion in *Norris* did not claim otherwise.

[7]

The Court's opinion in this case is inconsistent with Judge Clinton's concurring opinion in *Norris* by misconstruing the plain language of the "different person" element of Section 6.04(b)(2) by stating that transferred intent "may be used as to a second death to support a charge of capital murder that alleges the deaths of more than one individual during the same criminal transaction **only** if there is proof of intent to kill the same number of persons who actually died." *See* Maj. op. at 14 (emphasis added). Section 6.04(b)(2), however, plainly does not state that transferred intent may be used "only if there is proof of intent to kill the same number of persons who actually died." And, even if this is what Section 6.04(b)(2) stated, then the judgment of the court of appeals in this case should be affirmed since there is, as Presiding Judge Keller's dissenting opinion points out, evidence that appellant intended to kill at least "the same number of persons who actually died." The Court's opinion criticizes the majority opinion in *Norris* for not following the plain language of Section 6.04(b)(2) but then fails to give effect to the plain language of the "different person" element of that statute. *But see Norris*, 902 S.W.2d at 450-51 (Clinton, J., concurring only in result) (court should follow plain language of Section 6.04(b)(2)).

courts that have decided that "transferred intent" principles apply when a defendant murders both his intended victim and an unintended victim even in a case like this involving a murdered woman and her unborn child. *See Pennsylvania v. Sampson*, 900 A.2d 887, 889 (Pa. Super. Ct. 2006) (defendant responsible for murders of mother and unborn child under Pennsylvania statute similar to Section 6.04(b)(2)); *People v. Carlson*, 112 Cal. Rptr. 321, 326 (Cal. Ct. App. 1974) (doctrine of transferred intent applies even though the original object of the assault is killed as well as the person whose death was the unintended result; therefore, "in the present case in the application of the doctrine of transferred intent, the law would transfer defendant's felonious intent to kill his [murdered] wife to the fetus and the criminality of defendant's act toward the fetus would be the same as that directed to his wife"); *see also Norris*, 902 S.W.2d at 438 (noting split of California authorities on the issue).[8] It is thus clear that reasonable minds can differ on the "transferred intent" issue that the majority opinion in *Norris* settled even under statutes similar to Section 6.04(b)(2).

It, therefore, cannot fairly be said that the Court should disregard the rule of *stare decisis* and overrule *Norris* on the basis that *Norris* was erroneously reasoned or "flawed from the outset." *See State v. Medrano*, 67 S.W.3d 892, 901-03 (Tex.Cr.App. 2002) (Cochran, J., joined by Keller, P.J., and Keasler, Hervey, and Holcomb, JJ.) (a reason for disregarding the rule of *stare decisis* is that the previous decision was flawed from the outset). It is also significant that the Legislature has not

---

[8]

*See also People v. Lovett*, 283 N.W.2d 357 (Mich. Ct. App. 1979) (in cases like this, there are as many crimes as there are victims); *Ford v. State*, 625 A.2d 984, 1004-05 (Md. 1993) (McAuliffe. J., concurring) (and cases cited particularly a 1992 unpublished decision by the Delaware Supreme Court in *Robinson v. State* 1992 Del. LEXIS 506 (Del. 1992) construing a Delaware statute very similar to Section 6.04(b)(2) and federal court decisions applying "the principle of transferred intent in cases where the intended victim is killed by the same act that kills the unintended victim"); Harris, *supra*.

changed the construction of Section 6.04(b)(2) by *Norris* during the more than thirteen years since *Norris* was decided. *See Medrano*, 67 S.W.3d at 902 (legislative silence after a statute has been construed is some evidence that the legislature intended "the same construction should continue to be applied to that statute").[9] And the Legislature could easily have done this without reenacting Section 6.04(b)(2) in the same terms but with the additional phrase, "we really mean it." *See Medrano*, 67 S.W.3d at 907-08 (Womack, J., dissenting, joined by Price, J.) (if judicially construed statute "could easily be set right by clarifying language, the legislative choice not to do so" might be more significant than when a clearly stated and unambiguous statute is judicially misconstrued leaving Legislature with little choice but to reenact the statute in the same terms but with the

---

[9]

The Court's opinion does not address the Legislature's failure to change the construction of Section 6.04(b)(2) by the majority opinion in *Norris*. The author of the Court's opinion in this case expressed the view in *Medrano* that legislative silence after a statute has been judicially construed is very persuasive evidence of legislative approval of that judicial construction:

> In addition, the majority's rationale for overruling [this Court's overruled precedent] distorts this Court's precedent and authority. There are several problems with the majority's analysis. First, long-standing case law says explicitly that if the legislature does not amend a statute after it has been judicially construed, we assume that the legislature approved the judicial construction. (Citations omitted). Contrary to that long-established precedent, the majority contends that "legislative inaction does not necessarily equate to legislative approval." Whether or not that is true, the assertion is made without reference to any authority. Second, not only did the legislature not "immediately amend" [the applicable statute] in response to [this Court's overruled precedent], it has not, to this day, made any changes to it. Third, if this Court can overrule precedent simply by saying that it can, what has become of *stare decisis*? Are we now to decide issues without even considering the collected wisdom of the past? Finally, how are we to know when legislative inaction following a judicial interpretation of a statute is agreement with the interpretation and when it is the legislature sitting back and waiting for this Court to recognize that it has made an error and remedy that error on its own?

*See Medrano*, 67 S.W.3d at 904 (Johnson, J., concurring only in the decision to remand).

additional phrase, "we really mean it").

This case seems to meet all of the criteria, approved by the eight members of this Court who participated in the decision in *Medrano*, for following the rule of *stare decisis*. It is, therefore, difficult not to conclude that the Court ignores this rule and overrules *Norris* simply because, it can. *But see Medrano*, 67 S.W.3d at 904 (Johnson, J., concurring only in the decision to remand) ("[I]f this Court can overrule precedent simply by saying it can, what has become of *stare decisis*?").

I respectfully dissent.

Hervey, J.


Filed: December 17, 2008
Publish